After the foregoing statement of facts,
GROSSCUP, Circuit Judge,
delivered the opinion:
Commerce, briefly stated, is the sale or exchange of commodities. But that which the law looks upon as the body of commerce is not restricted to specific acts of sale or exchange. It includes the intercourse—all the initiatory and intervening acts, instrumentalities and dealings—that directly bring about the sale or exchange. Thus, •though sale or exchange is a commercial act, so also is the solicitation of the drummer, whose occupation it is to bring about the sale or exchange. Brennan v. Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719. The whole transaction from initiation to culmination is commerce.
When commerce, thus broadly defined, is between parties dealing from different states—-to be effected so far as the immediate act of exchange goes by transportation from state to state—it is “commerce between the states,” within the meaning of the constitution, and the statute known as the Sherman Act. But it is not the transportation that constitutes the transaction interstate commerce. That is an adjunct only, essential to commerce, but not the sole test. The *532 underlying test°is that the transaction, as an entirety, including each part calculated to bring about the result, reaches into two, or more states; and that the parties dealing with reference thereto deal from different states.
An interstate commercial transaction is, in this sense, an affair rising from different states, and centering in the act of exchange, each essential part of the affair being as much commerce as is the center. With this definition in mind, let us see what the transaction made out in the petition is.
For the purpose of clear exposition, the facts set forth in the petition should be separated into two groups—those that are intended to bring the transaction within the body of interstate commerce; and those that are intended to fix upon such transaction the character of unlawful combination and conspiracy. Shorn of verbiage, and of immaterial accessories, the first group may be stated as follows: The defendants, controlling sixty per cent, of the trade and commerce in fresh meats in the United States, buy, in the course of their business, livestock shipped from points throughout the United States; which, having been converted into fresh meats, is sold again by them at the places where prepared, to dealers and consumers in other states; or is sold through their agents, located in other states, to dealers and consumers in the states where the agents are located. The .shipment in the first class of sales is made directly from the places where the meat is prepared to the dealers and consumers in other states, and in the latter class to the agents in the other states who, upon sale, deliver directly to the dealer and consumer.
What may be called the body of these transactions is two-fold. It reaches backward to the purchase of cattle that come to defendants from states other than those in which defendants manufacture; and it reaches forward to the sale of the meats, after conversion, to parties dealing with respect thereto from states other than the state of the defendants; followed by shipments into the other states. Each of these transactions constitute, in my judgment, interstate commerce. The purchase of cattle shipped habitually from other states to the markets where defendants purchase, in the expectation that the purchase will be made by the slaughter companies, is an act of interstate commerce. Hopkins’ Case, 171 U. S. 590, 19 Sup. Ct. 40, 43 L. Ed. 290.
It is none the less interstate commerce merely because the local incidents or facilities for such purchase are to be regarded as outside the interstate character of the transaction. Thus the local commission broker, or the men who drive the cattle from the pens to the slaughter house, need not, in any survey of the transaction, be held to be within the interstate status of the transaction. With them, it is essentially the same whether the cattle come from the state in which the purchase is made, or from other states. They are aids or facilities only, and as such are merely local incidents. But the purchase of livestock thus brought habitually from other states, relates, in its larger bearings, to a transaction that had it's beginning in other states. The original shipments are influenced, and to a large extent brought about, by the character of the purchase.
*533 The purchase, the shipments, and the transportation, are commerciálly interdependent; and in any survey of the transaction, as an entirety, none could be omitted. They each go to make the transaction, and covering different states, they stamp the transaction—not all its incidents, but its essential body—as a transaction in interstate commerce.
Coming, now, to the other branch of the transaction—the sales by the defendants—a like result follows. Unquestionably it is interstate commerce when purchasers from other states 'buy directly from the defendants, and have the meats shipped to them by the vendors. The situs of such a transaction, both as to initiatory intercourse, .and as to transportation in furtherance of the exchange, includes a state other than the one from which defendants deal.
I think the same is true of meat sent to agents, and sold from their stores. The transaction in such case, in reality, is between the purchaser and the agents’ principal. The agents represent the principal at the place where the exchange takes place; but the transaction, as a commercial entity, includes the principal, and includes him as dealing from his place of business. Indeed such privity exists between the principal and the transaction, that he could, at the instant, as a citizen of another state, sue upon the transaction in the federal courts; nor have I any question that if the conditions of this case were reversed, so that defendants were invoking the shelter, instead of seeking to escape, the obligations of the commerce clause, federal law would be found equal to the protection asked.
I need not dwell on the contention of defendants that the fresh meats in the hands of the agents are subject to ordinary state taxation, or upon the cases cited in this connection. It is enough to say that because a thing can be taxed by the state, it does not follow that it lies outside the body of interstate commerce; for commerce, interstate as well as domestic, is subject to the police and taxing power of the state, so long as the exercise of such power does not interfere with the national government’s exclusive right of regulation. Addyston Pipe & Steel Company v. United States, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; Austin v. Tennessee, 179 U. S. 349, 21 Sup. Ct. 132, 45 L. Ed. 224; Prentice and Egan on the Commerce Clause of the Constitution, p. 27. Nor shall I differentiate the Knight Case, 155 U. S. 685, 15 Sup. Ct. 248, 39 L. Ed. 310; the Hopkins Case and other cases urged upon me as applicable to the case under consideration. A study of these cases will show that they are not in conflict with the views already expressed.
The next inquiry is this: Do the facts set forth in the second grouping, fix upon the transaction, even though the transactions be within the body of interstate commerce, the character of unlawful combination. The averments of the petition in this respect may be summarized as follows: That the defendants are engaged in an unlawful combination and conspiracy under the Sherman act in (a) directing and requiring their purchasing agents at the markets where the livestock was customarily purchased, to refrain from bidding against each other when making such purchases; (b) in bidding up through their agents, the prices of livestock for a few days at a time, to induce *534 large shipments, and then ceasing from bids, to obtain livestock thus shipped at prices much less than it would bring in the regular way.; .(c) in agreeing at meetings between them upon prices to be adopted by all, and restriction upon the quantities of meat shipped; (d) in directing and requiring their agents throughout the United States to impose uniform charges for cartage for delivery, thereby increasing .to dealers and consumers the charges for such meats; and (e) in making agreements with the transportation companies for rebates and other discriminative rates.
No one can doubt that these averments state a case of combination. Whether the combination be unlawful or not, depends on whether it is in restraint of trade. The general meaning of that term is no longer open to inquiry. It has been passed upon carefully by the Supreme Court in the Freight Association Case, 166 U. S. 290, 17. Sup. Ct. 540, 41 L. Ed. 1007, and in the Traffic Case, 171 U. S. 558, 19 Sup. Ct. 25, 43 L. Ed. 259, where the whole subject was a year later elaborately re-argued. I will not extend into this opinion even a summary of these'cases. It is clear from them that restraint of trade is not dependent upon any consideration of reasonableness or unreasonableness in the combination averred; nor is-it to be tested by the prices that result from the combination. Indeed, combination that leads directly to lower prices to the consumer may, within the doctrine of these cases, even as against the consumer, be restraint of trade; and combination that leads directly to higher prices, may, as against the producer be restraint of trade. The statute, thus interpreted, has no concern with prices, but looks solely to competition, and to the giving of competition full play, by making illegal any effort at restriction upon competition. Whatever combination has the direct and necessary effect of restricting competition, is, within the meaning of the Sherman act- as now interpreted, restraint of trade.
Thus defined, there can be no doubt that the agreement of the defendants to refrain from bidding against each other in the purchase of cattle, is combination in restraint of trade; so also their agreement to bid up prices to stimulate shipments, intending to cease from bidding when the shipments have arrived. The same result follows when we turn to the combination of defendants to fix prices upon, and restrict the quantities of meat shippe'd to their agents- or their customers. Such agreements can be nothing less than restriction upon competition, and, therefore, combination in restraint of trade; and thus viewed, the petition, as an entirety, makes out a case under the Sherman act.
The demurrer challenges the petition for,multifariousness and misjoinder of parties; and challenges each paragraph of the petition, standing separately, as insufficient to constitute a case under the Sher‘man act. But the paragraphs can not properly be looked upon as separate causes of action. .They relate clearly to each other, thus con-, stituting a whole that is the sum of the parts; and thus regarded, are free from the objections indicated.
It may be true that the way of enforcing any decree under this petition is beset with difficulties, and that a literal enforcement may result in vexatious interference with defendant’s affairs. But in the inquiry *535 before me, I am not at liberty to stop before such considerations. The Sherman act, as interpreted by the Supreme Court, is the law of the land, and to the law as it stands both court and people must yield obedience.
The demurrer is overruled, and the motion for preliminary injunction granted.