# BINDERUP *v.* PATHE EXCHANGE, INCOR-PORATED, ET AL.

RROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 77.    Argued October 16, 1923.—Decided November 19, 1923.

1. Where jurisdiction of the District Court depends on the action arising under a law of the United States, and the court sustains a motion by the defense for a directed verdict based on the ground that the plaintiff's petition and opening statement fail to state facts sufficient to constitute a cause of action within the federal statute which the plaintiff relies on, the case is not reviewable directly by this Court under Jud. Code, § 238, as one in which the jurisdiction of the District Court was in issue. P. 304.

2. So *held*, where the trial judge, in a memorandum accompanying the ruling, indicated his opinion that the motion went to the jurisdiction, erroneously assuming that failure to allege facts sufficient to constitute a cause of action under a federal statute is a jurisdictional defect. P. 305.

3. A complaint setting forth a substantial, as distinguished from a frivolous, claim under a federal statute presents a case within the jurisdiction of the District Court as a federal court; and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. P. 305.

4. New York manufacturers and distributors of motion-picture films, in the regular course of their business, shipped films from that State to Nebraska and delivered them there to a Nebraska resident, as lessee under agreements, which by their terms were to be deemed and construed as New York contracts, and which licensed and obliged the lessee to exhibit the pictures, for specified periods, in moving-picture theatres, reserved rentals to the lessors and provided for ultimate reshipment by the lessee on advices to be given by then    *Held*, that the business of the lessors, and their transactions with the lessee, were interstate commerce, notwithstanding that, in accordance with the contracts, the films were delivered to him through agencies of the lessors in Nebraska to which they were first consigned and transported. P. 309.

5. It does not follow that because a thing is subject to state taxation it is also immune to federal regulation under the commerce clause. P. 311.

6. A combination and conspiracy of concerns controlling the distribution of motion-picture films, to put out of business an exhibitor of motion pictures who has been procuring his films through agreements made in interstate commerce with members of the combination and can procure them in no other way, and to accomplish this end by illegally canceling his existing contracts and by refusing to deal with him in the future, is a restraint on interstate commerce in violation of the Anti-Trust Act. P. 311.

280 Fed. 301, reversed.

· ERROR to a judgment of the Circuit Court of Appeals affirming, for want of jurisdiction in the District Court, a judgment of the latter which dismissed, upon a directed verdict, an action for damages under § 7 of the Sherman Act.

Mr. Dana B. Van Dusen, with whom Mr. C. P. Ander-, berry, Mr. Norris Brown and Mr. Irving F. Baxter were on the brief, for plaintiff in error.

The court below overlooked the following allegations of the complaint: That the usual course of business was for the contracts to be made in New York prior to the time the films left the New York factories; that after the films reached the Omaha agents, they continued to move from exhibitor to exhibitor throughout a zone of four States, and that, since plaintiff was only one of a number of exhibitors in that zone using the same film, it was constantly crossing state lines and might equally as well come to him from another State as from within the State of Nebraska; that the refusal of defendants to supply plaintiff with films applied to all films to be manufactured and shipped in the future from New York to the Omaha agents; and that the rule which prevented plaintiff from leasing films direct from New York or from any other zone office of the defendants, combined with the concerted refusal of all business dealings at Omaha, deprived plaintiff of opportunity to purchase films anywhere in the United States.

*Wagner* v. *Covington,* 251 U. S. 95; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500; *General Oil Co.* v. *Crain,* 209 U. S. 211; and *Bacon* v. *Illinois,* 227 U. S. 505, relied upon by the court below, involved the constitutionality of state taxation, and are based upon facts dissimilar to the facts in the case at bar. In those cases, the articles of trade were always already inside the State of the purchaser when the contract of sale was made. The dissenting opinion below recognizes the similarity between this case and *Swift & Co.* v. *United States,* 196 U. S. 375.

Decisions with regard to state taxation are inapplicable to the determination of questions arising under the Sherman Act. *Stafford* v. *Wallace,* 258 U. S. 495; *Addyston Pipe Co.* v. *United States,* 175 U. S. 211; *Butler Bros.* v. *U. S. Rubber Co.,* 156 Fed. 1; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50; *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290.

Films moving from New York to plaintiff through the hands of Omaha agents pursuant to contracts previously entered into, move in interstate commerce. *Caldwell* v. *North Carolina,* 187 U. S. 622.

Films moving to plaintiff from points in other States within the Omaha zone, whether moving directly to plaintiff or through the hands of the Omaha agents, move in interstate commerce.

Even that part of the films which were already in the State prior to the execution of the contracts between plaintiff and the defendants still remained in interstate commerce. Films are sent to Omaha for purposes of sale or lease. The local exchange is merely the solicitor of orders upon behalf of its New York principal. It does not have the power to enter into contract. Solicitation and delivery alone take place within the State. The subsequent movements from hand to hand throughout

the zone are controlled by the nonresident principal, who at no time surrenders ownership or control over the film.

The films are not "at rest" upon arrival at Omaha. See *Western Union Tel. Co. v. Foster,* 247 U. S. 105; *Western Oil Co. v. Lipscomb,* 244 U. S. 346; *Champlain Co. v. Brattleboro,* 260 U. S. 366.

To separate the shipment from New York to Omaha from the movement from Omaha to the Nebraska exhibitor, is to look solely to the matter of transportation. Mere transportation, however, does not constitute trade and therefore does not constitute commerce, as it must be understood in a discussion of the Sherman Act. Sales by branch agencies of packers to purchasers within the same State constitute interstate commerce under that act. *Swift & Co. v. United States,* 196 U. S. 375. See also, s. c. 122 Fed. 529; and *Stafford v. Wallace,* 258 U. S. 495. This case is stronger than the *Swift Case,* because here the contracts were with the New York principals rather than the local agents. The importance of the approval of these contracts in another State was emphasized in *Hump Hairpin Co. v. Emmerson,* 258 U. S. 290.

If the industry be nation-wide in scope and the principals to the contract reside in different States, the application of the Sherman Act cannot be destroyed by the forms or technicalities of the original package doctrine.

Even apart from prior contract, a distributing agency is not a final destination but a mere facility. Each picture is an unique article and may itself be considered the original package.

The dealings between the Omaha agencies and plaintiff in the same State are not purely local matters. *Ramsay Co. v. Associated Bill Posters,* 260 U. S. 501; *Butler Bros. v. U. S. Rubber Co.,* 156 Fed. 1; *United States v. Jellicoe Coal Co.,* 46 Fed. 432; *Gibbs v. McNeely,* 119 Fed. 120.

It is unnecessary to establish that the films at Omaha

remained in interstate commerce, since the conspiracy complained of had a direct effect upon the interstate commerce of bringing films from New York to Omaha, by rendering it impossible in the future to bring films from New York for use by plaintiff in Nebraska, thus narrowing the market for the sale of films by foreign manufacturers within Nebraska. *Montague & Co.* v. *Lowry,* 193 U. S. 38; and other cases.

It is immaterial whether the interstate commerce which is affected takes place prior or subsequent to the intrastate sale. *Montague & Co.* v. *Lowry, supra; United States* v. *Reading Co.,* 226 U. S. 324; *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344, 410; *Knauer* v. *United States,* 237 Fed. 8; *Council of Defense* v. *International Magazine Co.,* 267 Fed. 390.

*Mr. William Marston Seabury* and *Mr. Arthur F. Mullen,* with whom *Mr. Charles B. Samuels, Mr. Elek John Ludvigh, Mr. S. F. Jacobs, Mr. Saul E. Rogers, Mr. Karl W. Kirchwey, Mr. Gabriel Hess, Mr. Siegfried F. Hartman, Mr. Oscar M. Bate, Mr. J. Robert Rubin, Mr. John J. Sullivan* and *Mr. Eugene N. Blazer* were on the brief, for defendants in error.

I. The judgment of the District Court was reviewable only under Jud. Code, § 238. *United States* v. *Jahn,* 155 U. S. 109; *Boston & Maine R. R.* v. *Gokey,* 210 U. S. 155; *Wilson* v. *Republic Iron Co.,* 257 U. S. 92.

In the case at bar, where the decision of the District Court denied its own jurisdiction, it is clear that even if the District Court, after deciding that it was without power to proceed, had assumed to determine other questions incidental to the merits of the controversy described in the complaint, this Court alone would have had jurisdiction to review the case, because when a court holds that it is without power to proceed it is unable thereafter to determine any other issue involved in the controversy.

True, the judgment of the District Court does not specify the grounds of dismissal, but its opinion, to which reference may be made for the purpose of ascertaining the grounds of the decision (*Loeb* v. *Columbia Township Trustees,* 179 U. S. 472), clearly states them.

Where, as here, the cause is cognizable exclusively by a federal court, in which federal jurisdiction is invoked solely upon the ground that the cause is one arising under a federal statute, and dismissal results from the failure of the petition in a fundamental respect to state facts sufficient to constitute such a cause of action, that judgment of dismissal denies the existence of jurisdiction in the District Court as a federal tribunal and presents a strictly jurisdictional issue which is reviewable exclusively in this Court under Jud. Code, § 238. *Blumenstock Bros.* v. *Curtis Pub. Co.,* 252 U. S. 436; *The Steamship Jefferson,* 215 U. S. 130; *The Ira M. Hedges,* 218 U. S. 264; *Mitchell Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 247; *Weber* v. *Freed,* 239 U. S. 325; *The Pesaro,* 255 U. S. 216; *The Carlo Poma,* 255 U. S. 219. *Hart* v. *Keith Exchange,* 262 U. S. 271, distinguished.

II. This Court has no jurisdiction to review the judgment of the District Court except as prescribed in Jud. Code, § 238. *Seney* v. *Swift & Co.,* 260 U. S. 146; *Union & Planters Bank* v. *Memphis,* 189 U. S. 71; *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561; *Four Hundred and Forty-three Cans of Egg Product* v. *United States,* 226 U. S. 172; *Carolina Glass Co.* v. *South Carolina,* 240 U. S. 305; *City of New York* v. *Consolidated Gas Co.,* 253 U. S. 219; *The Carlo Poma,* 255 U. S. 219.

The Act of September 14, 1922, amending Jud. Code, § 238, known as § 238a, has no application to the case at bar. It was passed too late to be of service to the plaintiff in error, and it clearly does not mean that, after the wrong court has gone to judgment on a case, it may then be shunted into another court for further consideration and review.

III. The facts stated in the complaint describe transactions which as a matter of law were local and not interstate and hence the allegations were insufficient in a jurisdictional respect to constitute a cause of action.

The individual branch managers of the several corporate defendants were citizens of Nebraska, and they were not alleged to be engaged in interstate commerce. The corporate defendants are in most instances foreign corporations which are engaged generally in interstate commerce. But the transactions described in the petition did not relate to interstate commerce. They concerned local persons and local things only.

It appears that, pursuant to the established custom of the trade, the defendants send a specified quantity of films to their several exchanges at Omaha, and after the films reach the exchanges they are unpacked and stored at the local offices of the defendants until they begin to rotate among the exhibitors of Nebraska, incidentally going into Iowa and South Dakota, but having their situs at the Omaha exchange, where they become and remain a part of the general property in Nebraska during their entire commercial life. When a Nebraska exhibitor wishes to rent a film from any of the defendants, he rents it from the Omaha exchange, and no interstate transaction or movement of the film is involved.

The plaintiff asserted that the defendants controlled the distribution of the entire production of films in the United States, and that no films could be procured from any other source that could be used in plaintiff's theatres, and that no films had ever been produced in the State of Nebraska. Notwithstanding this sweeping assertion, if the films of the defendants were at rest in their local exchanges when the plaintiff endeavored to rent them, interstate commerce would not be affected by a refusal of the defendants' agents in Omaha to deliver to the plaintiff in Nebraska.

The plaintiff does not allege that films were sent to him directly from beyond the State by the defendants. On the contrary, he says that they were procured by the defendants from beyond the State and were forwarded to him by express and parcels post. This means that the defendants' agents forwarded the films from the Omaha exchanges to the plaintiff in Nebraska by express and parcels post.

It is alleged that in leasing films from their New York offices defendants " through their branch offices in Omaha " entered into written and oral contracts with the plaintiff on the terms described in the written contracts attached to the petition, and that thereunder the title, control and right to recall the films was at all times retained by the home offices at New York.

The essential thing which appears from these exhibits is that deliveries of the films were made by the defendants to the plaintiff and redeliveries from plaintiff to the defendants entirely at the Omaha branch offices, again conclusively indicating the local character of the transactions.

Even the conspiracy charged was to ruin the plaintiff's business, and, as we have said, the plaintiff's business was purely local.

When the films reached the exchanges in Omaha they were at rest and ceased to be in interstate commerce, and any agreement,.combination or conspiracy by which their subsequent movements in Nebraska were restricted would not constitute interstate trade or commerce. *Mutual Film Corporation* v. *Ohio Industrial Comm.*, 236 U. S. 230. *United States* v. *United Shoe Machinery Co.*, 264 Fed. 138, distinguished.

This is not a case " where orders are taken in one State for goods to be supplied from another State, which orders are transmitted to the latter State for acceptance or rejection and filled from stock in that State," which would

constitute interstate commerce.  *Singer Sewing Machine Co.* v. *Brickell,* 233 U. S. 304; *Crenshaw* v. *Arkansas,* 227 U. S. 389; *Brennan* v. *Titusville,* 153 U. S. 289; *Caldwell* v. *North Carolina,* 187 U. S. 622; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *Dozier* v. *Alabama,* 218 U. S. 124; *Western Oil Co.* v. *Lipscomb,* 244 U. S. 346.

We are within the principle of the cases which hold that property brought from another State and withdrawn from the carrier and held by the owner with full disposition becomes subject to the local taxing power notwithstanding the owner may intend actually to forward it to a destination beyond the State.  *Bacon* v. *Illinois,* 227 U. S. 504; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500; *Kelley* v. *Rhoads,* 188 U. S. 1; *Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82; *Woodruff* v. *Parham,* 8 Wall. 123; *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 U. S. 517; *Pittsburgh & Southern Coal Co.* v. *Bates,* 156 U. S. 577; *General Oil Co.* v. *Crain,* 209 U. S. 211; *Browning* v. *Waycross,* 233 U. S. 16; *Southern Pacific Co.* v. *Arizona,* 249 U. S. 472.

Nor are the films plunged again into interstate commerce by the fact that the ultimate approval of the local contracts may in most instances rest with the home office of the defendant companies situated beyond the State, or by the fact that when the films reach the Omaha exchanges the defendants intend that they may be sent into Iowa or South Dakota, as the authorities cited show.

The point is that, even though the Nebraska films might be subject to control by the home offices of the defendants, nevertheless that control, even when exerted, did not result in movements or shipments of the films resting in Omaha, in interstate commerce.

There is a complete absence of allegation to indicate that there was or could have been any combination or conspiracy to restrain interstate commerce.

There is nothing but the reiteration of the baseless contention that the defendants combined and conspired to

put the plaintiff out of business. *Ramsay Co.* v. *Associated Bill Posters,* 260 U. S. 501, distinguished.

IV. The complaint failed in other respects to state facts sufficient to constitute a cause of action under the Sherman Act or any other of the anti-trust statutes.

In a case such as this every essential element of the court's jurisdiction must not only affirmatively appear, but it must appear with substantial certainty and without doubt or ambiguity. *Blumenstock Bros.* v. *Curtis Pub. Co.,* 252 U. S. 436.

Here, the statements of plaintiff's counsel affirmatively disclosed a case which did not affect or relate to a restraint of trade or a monopoly of any part of interstate commerce, and hence there was and is no cause of action. *Oscanyan* v. *Arms Co.,* 103 U. S. 261.

The statement of plaintiff's counsel was in substantial accord with the allegations of the petition, which were deficient.

Many authorities sustain the legality of trade association activities involving conduct much more serious than anything alleged against the defendants.

The plaintiff has endeavored to allege a conspiracy among the defendants to restrain interstate trade and commerce in motion picture films as a result of which plaintiff was injured. But an entirely different state of facts is actually set forth. The only purpose and object of the conspiracy which may be said to be well pleaded is the charge that defendants conspired to ruin the plaintiff's business and not to restrain interstate trade or commerce.

True, the expression, "In restraint of trade and commerce among the several States" is used, but these expressions are mere conclusions of law. *Witherill & Dobbins Co.* v. *United Shoe Mfg. Co.,* 267 Fed. 950.

Although by itself the charge that the defendants conspired to ruin the plaintiff's business might constitute an

illegal purpose, yet, when stated in conjunction with facts which show that this was not the purpose of the alleged concerted action of the defendants, it becomes clear that, even if ruination of the plaintiff's business resulted from the acts of the defendants in the protection of their own business, if these acts were lawful, that result was a mere incident of a lawful purpose, executed by lawful means and gave rise to no cause of action against the defendants. *American Steel Co.* v. *American Steel & Wire Co.,* 244 Fed. 300.

Moreover, since it appears that, even if everything alleged in the petition were true, no purpose or object unreasonably and directly to restrain interstate commerce has been shown, the means by which the supposed conspiracy is alleged to have been attained must not only be illegal, but they must directly and unreasonably restrain interstate trade and commerce, otherwise there is no cause of action.

The means used to effect what in reality was the lawful object of the defendants, namely, the protection and preservation of their own business, which plaintiff prefers to describe as a conspiracy to ruin his business, are each and all of them lawful.

Mr. Justice Sutherland delivered the opinion of the Court.

This action was brought under the provisions of § 7 of the Act of Congress of July 2, 1890, commonly called the Anti-Trust Act, c. 647, 26 Stat. 210. The complaint is long, but the allegations necessary to be considered here may be summarized as follows:

Plaintiff in error, a resident of the State of Nebraska, hereafter called the "exhibitor," owned a moving picture theater at Minden, in that State, and operated as lessee theaters in other places, to all of which, including his own, he supplied moving picture films and advertis-

ing matter connected therewith.  In addition, he was in the business of selecting and distributing to a circuit of moving picture theaters, films and advertising matter accompanying them, under agreements with the various operators, some twenty or more in number, in various parts of the State.

The corporations named as defendants in error, hereafter called the " distributors," were located in the State of New York, and were there engaged in manufacturing motion picture films and distributing them throughout the United States.  The method of distribution was to make public announcement from time to time that films, which had been manufactured and approved, would be released, and thereupon send them from New York, by express or parcel post, to agencies in numerous cities for delivery to exhibitors who hired and paid for their use.

Some of these distributors entered into contracts with the exhibitor, by the terms of which they leased motion pictures to him with the right and license to display them publicly at the theater or theaters named.  The individual defendants named were managers of branch offices or agencies for the various distributors at Omaha, Nebraska, through which films were distributed to exhibitors in the States of Iowa, Nebraska, South Dakota and Minnesota. These contracts by their terms were deemed made in New York, were to be construed according to the laws of that State, and provided that deliveries should be made to the exhibitor through the Omaha branch offices.  The exhibitor, upon his part, agreed to accept and publicly exhibit the motion pictures for the periods of time fixed, for which right he was to pay specified sums.  When the use of the pictures was completed according to the contract, they were to be re-shipped on advices given by the distributors.

The complaint further alleges that these distributors control the distribution of all films in the United States

and that the films cannot be procured from others. The Omaha Film Board of Trade is a Nebraska corporation, organized for the purpose of promoting good will among those engaged in the motion picture business and for other purposes, its membership being limited to one representative from each company or person engaged in the film business. It is alleged that the exhibitor's business was successful and profitable and that, the cupidity of the distributors being thereby aroused, some of them requested a share of his patronage, and, upon his refusal, made threats to put him out of business by underbidding and supplying the various theaters constituting his circuit; that the Omaha Film Board of Trade was organized for the purpose of enabling these distributors to control prices and dictate terms to their patrons in Nebraska and other States. It is further alleged that the business of the exhibitor had grown to large proportions; that he was procuring films from some of the members of the Omaha Film Board of Trade, but had refused to buy from others, and that thereby a spirit of hostility was aroused against him on the part of the latter who thereupon brought great pressure to induce those with whom he was dealing to cease doing business with him; that all the defendants in error thereupon unlawfully combined and conspired in restraint of trade and commerce among the several States, with the purpose and intent of preventing him from carrying on his said business and with the intent to ruin him; that they caused false charges to be made against him before the Film Board of Trade, and, without his knowledge or an opportunity to be heard, placed him upon its blacklist, of which notice was given to distributors who thereupon refused to transact further business with him; that those distributors who were not members of the Film Board of Trade coöperated with and approved the action of the Board and conspired with the others to ruin the business, credit and reputation of the exhibitor;

that, in furtherance of the combination and conspiracy, the distributors have ever since refused to deal with him or furnish him with film service and have caused the unexpired contracts which he held with some of the distributors to be illegally and unlawfully cancelled and that he has ever since been and still is deprived of such service. As a result of the foregoing, the exhibitor asked judgment for three times the amount of damages which he had suffered as alleged.

Upon this complaint and an answer the case went to trial before a jury. After counsel for the exhibitor had made his opening statement to the jury the defendants in error moved the court for a directed verdict in their favor, upon the ground " that the petition and opening fail to state facts sufficient to constitute a cause of action arising under the Sherman Act, or any act amendatory thereof." The court sustained the motion and instructed the jury to return a verdict for the defendants, which was done. Thereupon judgment was entered upon the verdict dismissing the cause. In a memorandum opinion the trial judge states that he had reached the conclusion that the motion should be sustained upon the grounds: (1) That the petition does not show with sufficient clearness that the complaint is one over which the court has jurisdiction; (2) That it fails to show with sufficient clearness any combination or conspiracy sufficient to justify the court in proceeding further with the trial.

The case was taken by writ of error to the Circuit Court of Appeals where the judgment was affirmed for want of jurisdiction in the District Court. 280 Fed. 301.

First. Defendants in error have submitted a motion to dismiss the writ of error here. The statement of the ground is somewhat ambiguous, but it is, in substance, that the motion in the trial court attacked the complaint for a failure to state a cause of action under the Sherman Act; that this constituted a challenge to the jurisdiction

and, consequently, the writ of error should have been taken directly to this Court. But the motion below in terms was put upon the ground that the complaint and the opening statement failed to state facts sufficient to constitute a cause of action,—not that the court was without jurisdiction,—and it is this motion that was sustained. The memorandum, it is true, indicates that the trial judge was of opinion that the motion for a directed verdict went to the jurisdiction; but it is apparent that, as to this, he assumed that an unsuccessful attempt to allege facts sufficient to constitute a cause of action under a federal statute constitutes a jurisdictional defect.

Section 238 of the Judicial Code provides that appeals and writs of error may be taken from the district courts direct to this Court " in any case in which the jurisdiction of the [district] court is in issue." As it has been many times decided, the jurisdiction meant by the statute is that of the court as a federal court only, and not its jurisdiction upon general grounds of law or procedure. See, for example, *Louisville Trust Co.* v. *Knott,* 191 U. S. 225. The contention here seems to be broadly, that where the cause of action is based upon an act of Congress, unless the complaint states a case within the terms of the act the federal court is without jurisdiction.

Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court; and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it. Jurisdiction,

74308°—24——20

as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous or, in other words, is plainly without color of merit. *Weiland* v. *Pioneer Irrigation Co.,* 259 U. S. 498, 501; *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561, 576; *Matters* v. *Ryan,* 249 U. S. 375, 377; *Flanders* v. *Coleman,* 250 U. S. 223, 227; *Louisville & Nashville R. R. Co.* v. *Rice,* 247 U. S. 201, 203; *Lovell* v. *Newman & Son,* 227 U. S. 412, 421; *Denver First National Bank* v. *Klug,* 186 U. S. 202, 204; *Louie* v. *United States,* 254 U. S. 548; *Hart* v. *Keith Exchange,* 262 U. S. 271, 273; *The Fair* v. *Kohler Die Co.,* 228 U. S. 22, 25. In that event the claim of federal right under the statute, is a mere pretence and, in effect, is no claim at all. Plainly there is no such want of substance asserted here. In the case last cited this Court said (p. 25):

"We are speaking of a case where jurisdiction is incident to a Federal statutory cause of action. Jurisdiction is authority to decide the case either way. Unsuccessful as well as successful suits may be brought upon the act, and a decision that a patent is bad, whether on the facts or the law, is as binding as one that it is good. See *Fauntleroy* v. *Lum,* 210 U. S. 230, 235. No doubt if it should appear that the plaintiff was not really relying upon the patent law for his alleged rights, or if the claim of right were frivolous, the case might be dismissed. In the former instance the suit would not really and substantially involve a controversy within the jurisdiction of the court, *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.,* 185 U. S. 282, 287, 288, and in the latter the jurisdiction would not be denied, except possibly in form. *Deming* v. *Carlisle Packing Co.,* 226 U. S. 102, 109. But if the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad."

In *Lamar* v. *United States,* 240 U. S. 60, this Court dealt with the question whether the failure of an indict-

ment to charge a crime against the United States presented a question of jurisdiction within the meaning of § 238 of the Judicial Code. The Court held in the negative, saying (p 64):

"Jurisdiction is a matter of power and covers wrong as well as right decisions. *Fauntleroy* v. *Lum*, 210 U. S. 230, 234, 235. *Burnet* v. *Desmornes*, 226 U. S. 145, 147: There may be instances in which it is hard to say whether a law goes to the power or only to the duty of the court; but the argument is pressed too far. A decision that a patent is bad, either on the facts or on the law, is as binding as one that it is good. *The Fair* v. *Kohler Die Co.*, 228 U. S. 22, 25. And nothing can be clearer than that the District Court, which has jurisdiction of all crimes cognizable under the authority of the United States (Judicial Code of March 3, 1911, c. 231, § 24, second), acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong. The objection that the indictment does not charge a crime against the United States goes only to the merits of the case."

Our attention is directed to certain decisions of this Court which are said to support the contention of defendants in error. We think their effect is misapprehended. In *The Steamship Jefferson*, 215 U. S. 130, the case had been dismissed below expressly for want of jurisdiction. It was asserted in support of a motion to dismiss the appeal that while in form of expression the suit was so dismissed, the action of the lower court was, "in substance, alone based upon the conclusion that the facts alleged were insufficient to authorize recovery, even although the cause was within the jurisdiction of the court." It was held, however, that the conclusion of the District Court was one which went to the jurisdiction, not to the sufficiency of the allegations of the bill; and there is no suggestion in the opinion that the two prop-

ositions are equivalent. In *The Ira. M. Hedges,* 218 U. S. 264, where the same condition was presented, this Court, after pointing out the difficulty of sometimes distinguishing between matters going to the jurisdiction and those determining the merits and suggesting that it might be said that there the two considerations coalesced, rested its decision upon the form of the decree, saying (p. 270):

"At all events, the form of the decree must be taken to express the meaning of the judge. If the decree was founded, as it purports to be, on a denial of jurisdiction in the court, this court has jurisdiction of the appeal. For all admiralty jurisdiction belongs to courts of the United States as such, and therefore the denial of jurisdiction brings the appeal within the established rule. See *The Steamship Jefferson,* 215 U. S. 130, 138."

In *Blumenstock Brothers* v. *Curtis Publishing Co.,* 252 U. S. 436, 441, it is said:

"In any case alleged to come within the federal jurisdiction it is not enough to allege that questions of a federal character arise in the case, it must plainly appear that the averments attempting to bring the case within federal jurisdiction are real and substantial."

The only authority cited in support of this statement is *Newburyport Water Co.* v. *Newburyport, supra,* where, at p. 576, the rule is stated thus:

". . . it is settled that jurisdiction does not arise simply because an averment is made as to the existence of a constitutional question, if it plainly appears that such averment is not real and substantial, but is without color of merit."

While the *Blumenstock Case* seems to put the emphasis of the test in the opposite way, it cannot be supposed that it was meant to modify the doctrine of the *Newburyport Case,* since its citation as authority is made without qualification.

It follows that the motion to dismiss the writ of error must be denied.

Second. We come then to consider whether the aver- ments of the complaint are sufficient to constitute a cause of action under the Anti-Trust Act; and this inquiry in- volves two questions: (1) Are the alleged transactions in which the exhibitor was engaged matters of interstate commerce, and (2) Do the alleged acts of the defendants in error constitute a combination or conspiracy in re- straint thereof?

1. The film contracts were between residents of differ- ent States and contemplated the leasing by one to the other of a commodity manufactured in one State and transported and to be transported to and used in another. The business of the distributors of which the arrangement with the exhibitor here was an instance, was clearly inter- state. It consisted of manufacturing the commodity in one State, finding customers for it in other States, mak- ing contracts of lease with them, and transporting the commodity leased from the State of manufacture into the States of the lessees. If the commodity were consigned directly to the lessees, the interstate character of the com- merce throughout would not be disputed. Does the cir- cumstance that in the course of the process the commodity is consigned to a local agency of the distributors, to be by that agency held until delivery to the lessee in the same State, put an end to the interstate character of the trans- action and transform it into one purely intrastate? We think not. The intermediate delivery to the agency did not end and was not intended to end the movement of the commodity. It was merely halted as a convenient step in the process of getting it to its final destination. The gen- eral rule is that where transportation has acquired an in- terstate character " it continues at least until the load reaches the point where the parties originally intended that the movement should finally end." *Illinois Central R. R. Co.* v. *Louisiana R. R. Comm.,* 236 U. S. 157, 163. And see, *Western Union Tel. Co.* v. *Foster,* 247 U. S. 105,

113; *Western Oil Refining Co.* v. *Lipscomb,* 244 U. S. 346, 349.

In *Swift & Co.* v. *United States,* 196 U. S. 375, 398, it was held that where cattle were sent for sale from a place in one State, with the expectation that the transit would end after purchase in another State, the only interruption being that necessary to find a purchaser at the stockyards, and this was a typical, constantly recurring course, the whole transaction was one in interstate commerce and the purchase a part and incident of it. It further appeared in that case that Swift & Company were also engaged in shipping fresh meats to their respective agents at the principal markets in other cities for sale by such agents in those markets to dealers and consumers; and these sales were held to be part of the interstate transaction upon the ground " that the same things which are sent to agents are sold by them, and  .  .  .  some at least of the sales are of the original packages. Moreover, the sales are by persons in one State to persons in another." In the same case in the court below, 122 Fed. 529, 533, upon this branch of the case, it is said:

" I think the same is true of meat sent to agents, and sold from their stores. The transaction in such case, in reality, is between the purchaser and the agents' principal. The agents represent the principal at the place where the exchange takes place; but the transaction, as a commercial entity, includes the principal, and includes him as dealing from his place of business."

The most recent expression of this Court is in *Stafford* v. *Wallace,* 258 U. S. 495, 516, where, after describing the process by which livestock are transported to the stockyards and thence to the purchasers, it is said:

" Such transactions can not be separated from the movement to which they contribute and necessarily take on its character. The commission men are essential in making the sales without which the flow of the current would be

obstructed, and this, whether they are made to packers or dealers. The dealers are essential to the sales to the stock farmers and feeders. The sales are not in this aspect merely local transactions. They create a local change of title, it is true, but they do not stop the flow; they merely change the private interests in the subject of the current, not interfering with, but, on the contrary, being indispensable to its continuity."

The transactions here are essentially the same as those involved in the foregoing cases, substituting the word "film" for the word "livestock," or "cattle," or "meat." Whatever difference exists is of degree and not in character.

The cases cited by defendants in error, upholding state taxation as not constituting an interference with interstate commerce, are of little value to the inquiry here. It does not follow that because a thing is subject to state taxation it is also immune from federal regulation under the Commerce Clause. *Stafford* v. *Wallace, supra,* pp. 525–527; *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 245.

2. The distributors, according to the allegations of the complaint, controlled the distribution of all films in the United States and the exhibitor could not procure them from others. The direct result of the alleged conspiracy and combination not to sell to the exhibitor, therefore, was to put an end to his participation in that business. Interstate commerce includes the interstate purchase, sale, lease, and exchange of commodities, and any combination or conspiracy which unreasonably restrains such purchase, sale, lease or exchange is within the terms of the Anti-Trust Act, denouncing as illegal every contract, combination or conspiracy "in restraint of trade or commerce among the several States." The allegation of the complaint is that the exhibitor had been procuring films from some of the distributors but had refused to buy from

others, who thereupon induced the former to cease dealing with him, and that all then combined and conspired, in restraint of interstate trade and commerce, to prevent him from carrying on his said business; that they have ever since refused to furnish him with film service and have caused unexpired contracts which he held with some of them to be illegally cancelled. It is difficult to imagine how interstate trade could be more effectively restrained than by suppressing it and that, in effect, so far as the exhibitor is concerned, is what the distributors in combination are charged with doing and intending to do.. It is doubtless true that each of the distributors, acting separately, could have refused to furnish films to the exhibitor without becoming amenable to the provisions of the act, but here it is alleged that they combined and conspired together to prevent him from leasing from any of them. The illegality consists, not in the separate action of each, but in the conspiracy and combination of all to prevent any of them from dealing with the exhibitor. See *United States* v. *Schrader's Son, Inc.,* 252 U. S. 85, 99; *Bobbs-Merrill Co.* v. *Straus,* 139 Fed. 155, 191. The contracts with these distributors contemplated and provided for transactions in interstate commerce. The business which was done under them—leasing, transportation and delivery of films—was interstate commerce. The alleged purpose and direct effect of the combination and conspiracy was to put an end to these contracts and future business of the same character and "restrict, in that regard, the liberty of a trader to engage in business," *Loewe* v. *Lawlor,* 208 U. S. 274, 293, and, as a necessary corollary, to restrain interstate trade and commerce, in violation of the Anti-Trust Act.

The judgments of the courts below are reversed and the case remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*