478

PARAMOUNT PUBLIX CORPORATION v. HILL et al. (twelve cases.)

No. 2068.

District Court, W. D. Wisconsin.

Dec. 20, 1932.

Miller, Mack & Fairchild, of Milwaukee, Wis., for plaintiff.

F. M. Wylie, Deputy Atty. Gen., for defendants.

Before PAGE, Circuit Judge, and GEIGER and FITZHENRY, District Judges.

PER CURIAM.

These twelve suits have been brought by the plaintiffs against the defendants who constitute commissioners of the department of agriculture and markets of the state of Wisconsin, charged with the administration of chapter 99 of the Wisconsin Statutes; also the defendant Orchard, an Assistant Attorney General of the state, the defendant Staten, an investigator for the department. In nine of the suits each of the complainants is a producer and distributor of copyrighted picture films—photoplays. In three of them the complainants are theater owners, two are exhibitors of photoplays in the state of Wisconsin. All of the plaintiffs are nonresidents of the state of Wisconsin, licensed to do business therein, and the object of the several actions is to restrain the department of agriculture and markets, its officers and agents, from proceeding under the department's petition in which it is alleged that the defendants therein (being plaintiffs herein) have violated section 99.14 of the Statutes of Wisconsin in that they have employed unfair, oppressive, and coercive practices in the purchase and sale of motion picture films in that state; and in the exaction, administration, and application of protection arrangements. The department's petition, as will later appear, was and is the basis of a proceeding initiated by said department against the several respondents therein, charging the latter, among other things, with attempting to monopolize the moving picture business and that such respondents who are therein characterized as "producer—affiliated exhibitors" are monopolizing, stifling, and suppressing competition in the business of showing motion picture films in that state, and that such acts constitute unfair methods of competition and unfair trade practices within the meaning of section 99.14 of the Wisconsin Statutes.

Before the expiration of the time for answering the petition in the state court

---

proceeding, the respondents therein (plaintiffs herein) filed objections to further proceeding thereunder on the grounds that such proceedings were in violation of their copyrights, of the due process clause of the Constitution of the United States, an unlawful interference with interstate commerce; wherefore, said section 99.14 is unconstitutional. The objections thus interposed were ignored and a further day set for public hearing. Thereupon these suits were filed, a temporary restraining order issued, and this three-judge court was convened.

It is believed that an analysis of the pleadings is essential for the purpose of indicating what facts are pertinent to a determination of the motion on behalf of the plaintiffs for an injunction pending these suits. Such, however, should be prefaced by noting the Wisconsin law pursuant to which the department and the defendants herein are acting, upon which the complaint in the state proceeding is predicated, and against which the complainants in these twelve suits direct their challenge respecting the power of the state to proceed. For the present, it suffices to note section 99.14:

Wis. Stats. 1929, § 99.14: "*Methods of competition and trade practices.* (1) Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited.

"(2) The department, after public hearing, may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair. The department, after public hearing, may issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair.

"(3) The department, after public hearing, may issue a special order against any person, enjoining such person from employing any method of competition in business or trade practice in business which is determined by the department to be unfair. The department, after public hearing, may issue a special order against any person, requiring such person to employ the method of competition in business or trade practice in business which is determined by the department to be fair."

The plaintiffs are here urging the objections filed to the petition in the said proceedings against which the defense urges three main propositions: First, that the bills were prematurely filed; second, that the producers are not engaged in interstate commerce; third, that even if they are, yet the matters being inquired into are intrastate acts within the police powers of the state, and affect interstate commerce, if at all, only incidentally. Answers have been filed in each of the twelve cases.

It may be said generally of the pleadings that notwithstanding the differences in situation and activity of the plaintiffs in some of the actions, all of the bills are rested upon the same ultimate facts; and that this is so appears quite clearly from the fact that the answers in the several cases are substantially identical with each other. It is therefore permissible in analyzing the pleadings to give a synopsis in part and to quote literally from other parts of one of the bills (we take that from the case wherein Paramount Publix Corporation is the plaintiff). Such plaintiff avers:

"The complainant Paramount Publix Corporation is and was during all of the times herein mentioned a corporation organized and existing under and by virtue of the laws of the State of New Jersey and engaged, during all of the time herein set forth, in licensing the operators of motion picture theatres throughout the United States to exhibit motion picture photoplays under copyrights granted by the United States and owned or held as exclusive licensee by the complainant (which motion picture photoplays so copyrighted are designated in the trade and are hereinafter referred to as 'photoplays') and in connection therewith using the United States mails, common carriers and other channels of commerce among the states."

After averring the organization and character of the department of agriculture and markets of the state of Wisconsin, its personnel and the relationship of the other defendants thereto, and after narrating the acts of the defendants in commencing a proceeding before the department by service of a notice and complaint—a copy of the latter being annexed to the bill—and likewise the interposition of complainant's objections to the exercise of any jurisdiction in connection with the proceeding so instituted and the grounds of such objection, and that the defendants, notwithstanding complainants' objections, propos-

ed to continue with the proceeding for the purpose of entering an order which would have the effect of regulating, controlling, or changing the terms and manner and conditions under which complainant licenses operators of motion picture theaters to exhibit photoplays, the complaint herein proceeds in substance as follows:

That complainant used a form of license agreement with operators of motion picture theaters for the exhibition of photoplays under copyrights, which forms are used in substantially all cases wherein plaintiff grants licenses throughout the United States. A copy of the form of license is annexed to the bill and the complaint avers the time and extent, seasonally, for effecting such licenses, the number entered into, and the obligations for license fees accruing thereunder.

The complaint thereupon deals with the alleged acts and transactions of the complainant which are referred to and intended to be comprehended by the complaint filed against it in the state department of agriculture and markets; and avers that such complaint is directed to and comprehends the acts of the complainant which are in conformity with its general trade practice, to wit:

"A. In the Spring of each year complainant announces its prospective list or program of photoplays for the twelve-month period (sometimes called 'season') commencing the following autumn, whereby such photoplays are to be released (which is a technical trade word meaning 'made available for exhibition') at approximately regular intervals during the season. Such announcement usually describes each photoplay to be produced, gives its title, names the star or leading player and the other featured players in the photoplay, the director, the author and the drama or story from which it is derived.

"B. Immediately after the announcement of its program of photoplays, complainant proceeds, through its salesmen, to solicit the operators of motion picture theatres located in the State of Wisconsin and other states (hereinafter for convenience called 'Exhibitors') to enter into license agreements with complainant in the form hereunto annexed as Exhibit 'C' covering complainant's program of photoplays for the coming season, all of which photoplays are copyrighted under the laws of the United States by copyrights owned or held as exclusive licensee by complainant, and

such license agreements, when signed by the Exhibitor, in each instance, are, under the terms thereof, mailed to the New York office of complainant and there are either accepted or refused by complainant.

"C. Laboratories for the production of prints of photoplays owned or held as exclusive licensee by the complainant are located at New York, Long Island City, New York, and Hollywood, California, and the prints of photoplays distributed by complainant are produced at one of the above laboratories.

"D. Each print of a photoplay produced at the laboratory is packed in a tin box which is enclosed in a wooden case and such prints, packed as aforesaid, are from time to time shipped and transported from the laboratories to offices of complainant located in various states, including an office in the City of Milwaukee, in the State of Wisconsin (which offices are known in the trade as 'exchanges') for delivery to exhibitors under license agreements in the form of Exhibit 'C'.

"E. Upon receipt of a print of a photoplay from the laboratory the exchange delivers such print to the exhibitor having the first right under the terms of his or its license agreement to exhibit such photoplay and when such print is returned to the exchange it is then transported to the exhibitor having the next succeeding right and so on until all exhibitors entitled to exhibit the photoplay from said print have made exhibition thereof.

"F. In the course of distribution of prints of photoplays, as aforesaid, there is a continuous flow and course of interstate trade and commerce between the several states of the United States, particularly between the City of New York in the State of New York and other states of the United States, including the State of Wisconsin, consisting of the soliciting and making of license agreements under copyrights for the future exhibition of photoplays; the transportation of the prints therefor from the laboratories to the exchanges throughout the United States for the purpose of furnishing such prints to Exhibitors for exhibition in compliance with the license agreements in the form of Exhibit 'C'; the continuing distribution of prints of photoplays from the exchanges to motion picture theatres licensed by the complainant to exhibit such photoplays and furnished with prints therefor by the complainant through the exchange; and the final shipment of

the print from the exchange to points within the State of New York."

The complaint then proceeds to charge that:

"The purchase and sale of motion picture films in the State of Wisconsin mentioned in the said complaint Exhibit A (being the State Department petition or complaint) refers to and designates the licensing of the exhibition of photoplays all of which are copyrighted under the Laws of the United States; motion picture films mentioned in said complaint Exhibit A refers to and designates such copyrighted photoplays; and the 'business of showing motion picture films' mentioned in said complaint Exhibit A refers to and designates the exhibition of such copyrighted photoplays; and accordingly the alleged practices, acts and transactions set forth in said complainant's Exhibit A and alleged to have been done or performed by the complainant and other so-called defendants in said proceeding, have reference and apply to practices, acts or transactions forming a part of the licensing of exhibitions of copyrighted photoplays and the transportation or conveyance in interstate commerce of the prints for use in the exhibition of such copyrighted photoplays."

In view of the detailed narrative of the bill respecting the character and manner of transacting the complainant's business, but particularly in view of the paragraph last just above quoted, it is deemed proper at this point to summarize the petition or complaint which was filed against the complainant and other respondents therein, to the end that the ultimate and subordinate facts therein charged may be considered in their pertinency upon the pending motion. Such ultimate and subordinate facts are summarized thus:

First. The respondents therein who are designated as "producer-affiliated exhibitors" are charged with "employing unfair practices in the purchase and sale of motion picture films," that is to say, in and through contracts for licensing exhibition of copyrighted photoplays in Wisconsin.

This allegation is supported in the complaint by specification of these particulars:

(a) That "distributors" refuse to sell films to "independents."

(b) That producer-affiliated exhibitors purchase pictures or plays "in excess of their requirements" thereby "preventing independent exhibitors from acquiring a suitable or sufficient number of pictures."

(c) That "distributors" "exact discriminatory prices, terms and conditions" as against "favored exhibitors."

(d) That distributors and producer-affiliated exhibitors "have conspired with each other in Wisconsin to exact discriminatory prices as against producer-affiliated or favored exhibitors."

Second. The respondents therein who are designed as "the distributor and producer affiliated exhibitors" are charged to employ unfair practices in the exaction of protective arrangements—that is to say— the fixing of an interval after one exhibition of a copyrighted photoplay before its exhibition by a succeeding exhibitor in the same community.

This allegation is supported in the complaint by specification of these particulars:

(a) That distributors have exacted "discriminatory protection against exhibitors."

(b) That distributors "have administered protection and the release of films in an unfair manner."

(c) That producer-affiliated exhibitors "have induced and coerced the distributors to exact unreasonable protection against independent exhibitors."

(d) The distributors and producer-affiliated exhibitors "have conspired with each other in the state of Wisconsin" to "exact discriminatory protection against independent exhibitors" and discrimination in the administration of protective arrangements and the release of films to independent exhibitors.

Third. That the "producer-affiliated exhibitors" are monopolizing the business of showing motion picture films, i. e., exhibiting copyrighted photoplays in communities in this state;

And particularly, in support thereof

(a) That they have secured control of competing theaters in given communities and, in some instances, have closed one or more theaters "thereby compelling patrons to come to the houses of producer-affiliated exhibitors."

(b) That such producer-affiliated exhibitors "have conspired in the state of Wisconsin to assign to each the exclusive control of the business of showing motion pictures in given communities in the state."

(c) That such last-noted practices "have the effect of monopolizing the busi-

ness of showing motion picture films in communities in this state."

If the summary of the plaintiff's complaint and of the petition or complaint in the state department which we have now given be considered in the light of the Wisconsin Statute, there can be no escape from the view that the proceeding instituted by the defendants is in the exercise, or attempted exercise, of powers granted by the Wisconsin Statute, viz.:

(1) To charge a violation of the statute;

(2) To compel the respondents (plaintiffs herein) to submit to a hearing;

(3) To determine the truth of the charges; and

(4) If such charges be found to be true, to enforce the statute and its penalties.

■ The answers filed by the defendants contain nothing which may be interpreted as a substantial denial of the affirmative showing of the bills respecting the character of the plaintiff's business in that it is carried on in exercise of rights under the copyright laws of the United States; that no sales of films or photoplays are made in Wisconsin or elsewhere; and that complainants' relationship to the exhibition of photoplays is comprehended wholly within the licensing of films which are produced in one state, transported to another in interstate commerce for the sole purpose of licensing exhibitions with the obligation to return the films when the right to exhibit has been exercised under the license agreements. A careful examination of the answers discloses that while allegations of the bill in this respect are at no point unequivocally denied, they are in substance admitted. For example, allegations of the bill charging the institution and pendency of the proceedings in the state court as being in exercise of a "pretended power" are met by a denial coupled with the affirmative allegation that it was and is a real and lawful power. The allegation respecting the plaintiffs' protection under the copyright laws, the plaintiffs' denial of any sales, its and their resort to instrumentalities of interstate commerce, allegations with respect to the comprehensiveness of the routine are met with but partial denials and an affirmative allegation, for example, that the proceeding instituted in the state did not have the character charged to it by the plaintiffs, but was and is instituted as a means of investigation of all activities of the respondents therein with a view of determining what, if any, jurisdiction or right the bureau had in the matter. It is assumed that these answers did not and do not put in issue any matter of fact material to the development and consideration of the theory of the bills.

■ This brings us to the question, upon this application, what facts are to be considered as pertinent and relevant to the complainants' asserted right to protection by injunction. It is our opinion that the answer to this question does not depend upon probabilities of the truth of the facts charged in the department's complaint; nor upon the credit to be given to affidavits filed by either of the parties upon this application. On the contrary, the question, in its relation to facts to be considered, is, as to the bureau or department, the power to charge and to consider whether, upon the proof which it intends to adduce, such charge is either true or false. If the complainants' theory is right that the facts which the department apparently has charged and presumably intends to establish in the state proceeding are beyond the power of the state to investigate or to deal with because of the relationship of the subject-matter in and to situations exclusively within the power of the federal government, the truth or falsity of the department's charge becomes quite immaterial— that is, the plaintiffs would not be entitled to an injunction on the ground that the state's charges are false.

Therefore, we feel that two sets of facts, and no others, are pertinent on the pending motions:

(1) The asserted facts contained in the state department's complaint and proceeding.

(2) The undisputed facts respecting the nature of the plaintiffs' businesses, their relationship to interstate commerce and the copyright law, and the susceptibility of the case charged by the department as being within the exclusive power of the federal government in the light of the interstate commerce, the copyright, antitrust, and Federal Trade Commission laws of the United States.

Upon this limitation of the facts, it is our opinion that the character of complainants' alleged activities, and the field wherein they are subject to challenge, is no longer open for consideration since the decision of Binderup v. Pathe Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308,

and Paramount Lasky Corporation v. United States, 282 U. S. 30, 51 S. Ct. 42, 75 L. Ed. 145; U. S. v. First National Pictures, Inc., 282 U. S. 44, 51 S. Ct. 45, 75 L. Ed. 151. These cases—particularly because of their entire analogy in point of fact—suffice to demonstrate beyond possibility of denial that complainants are carrying on their business, first, through the medium of interstate commerce; secondly, through exercise of their rights under the copyright laws; and, third (if the complaint of the state department is true), through violations of obligations or prohibitions of the laws of the United States respecting freedom of competition and trade in interstate commerce, monopoly, trusts, and the like—including the manner of exercising rights secured by patent or copyright laws—if it be contended that such latter are violative of the former. Thus—to recapitulate—in the state complaint the respondents therein —plaintiffs herein (who admittedly are carrying on their business in interstate commerce) are charged with, e. g., (1) "unfair practices" in the "sale" of films (now admitted to be mere distribution to copyright licensees); (2) refusal to sell films to "independents"; (3) exaction of "discriminatory prices, terms and conditions as against 'favored exhibitors'; (4) conspiring to exact the same (in Wisconsin, it is true); (5) unfair practices in the exaction of protective arrangements" as charged; (6) "exacting discriminatory protection" and administering it unfairly; (7) "monopolizing the business," i. e., "of exhibiting copyrighted photoplays in communities in this state"; (8) securing control of competing theaters, closing one or more to increase patronage of their own; (9) conspiring to sign to each (of producer affiliated exhibitors) exclusive control of the business in given communities; thereby (10) "monopolizing the business of showing motion picture films. * * *"

Now the complaint and its charges, as we have said, undeniably professes to bring the proceeding within the range of the state statute; and that compels answer to the question, Can such charges be interpreted as involving, conjecturally, plaintiffs' possible wrongdoing or breaches of obligations in respects which are other, different, and unrelated to such as arise out of the interstate character of their whole business? For more specific illustration, let us take the specification that complainants (distributors) "refuse to sell films to 'independents'" or that they "exact discriminatory prices, terms and conditions" as compared with other "favored exhibitors." There is no suggestion that these asserted wrongs grow out of anything else than the conduct of interstate business—the charges in effect mean that complainants conduct the business in that way. If this means anything, it is that "independents" are denied rights which are conferred upon them by the laws of the United States in respect of the freedom of competition, and from discriminatory terms, conditions, prices, and the like, in interstate commerce. The very point to the state complaint is that "independents" should enjoy reasonable equality of right and opportunity in respect of terms, conditions, prices, in short, opportunity in open and unrestricted interstate commerce. The challenge is directed against alleged restraints and practices which prevent "independents" from participation in plaintiffs' business as patrons.

This discussion has been advanced, not merely to reiterate, amplify, or illustrate the conclusion respecting the interstate character of plaintiffs' business, but to exclude the tenability of defendants' suggestion or insistence that the state statute, therefore the challenged state proceeding may have an efficacy, lawfully, to reach all practices of the respondents, not merely the interstate but the intrastate. First of all it is said that those sought to be reached are "incidental" to interstate commerce —not a part of it. We do not mean to say that the state is devoid of any and all power to enact regulations in the broad field characterized by defendants as the "moving picture business" or of theaters for carrying it on—simply because moving picture films, from their production, in their shipment, during exhibition and on return are and continue to be subjects of interstate commerce and not having a situs as property in a particular state. No one, we think would challenge the exercise of power by a state over safety, orderly conduct, and the like of theaters; nor, probably over the character of exhibitions, for example, of immoral films, merely because of their ownership in another state, or even because they may be copyrighted. Such power, if exercised, would truly be directed against "incidentals"; and it suffices to repeat what has been said, that the defendants in no aspect of the record are attempting to vindicate the statute in question as endowing them with, nor are the plaintiffs challenging, that sort of power. The state

statute by its very terms is a trade regulation; and the complaint lodged in the state department seems emphatically to reflect that as defendants' conception of its effect and scope. Neither therein, nor in the record, nor in argument is there suggestion of a concrete objective which may sustain the applicability of the statute or the state proceeding within any reserved power of the state such as above indicated. On the contrary, everything complained of, if true, is clearly in the field covered by the national Legislature in the several acts referred to. And that situation, as we believe, on principles quite elementary, excludes the possibility of concurrence of like power—either executive, legislative, or judicial, by the state over identical subject-matter—that is power remedially to vindicate, concurrently, rights protected or wrongs denounced in the lawful exercise of national authority, whose exercise operates to dominate and by dominating, excluding possibility of concurrence.

■ There remains for consideration the insistence by defendants that these suits are prematurely brought. The observations hereinbefore made, if tenable, furnish much of the reply. The suggestions that defendant may have power to deal with the alleged practices, or something else, if discovered on investigation (and which are "incidental" to interstate commerce); and that therefore (or in any event) the proceeding of the state had not "reached the judicial stage," lose sight of the basis of the plaintiffs' bills as a challenge of the whole power attempted to be exercised by defendants upon what we have characterized as undisputed facts. As already observed, the express charges in the department's complaint exclude the hypothesis that the statute is invoked to reach something (undisclosed) that may turn out to be "incidental" to interstate commerce or the like, and therefore within reserved power. By that is meant that the complaint—and the statute—when applied to the facts before us conclusively negative any thought, except to reach alleged practices, which, if indulged, are violative of national legislative pronouncement. There is nothing in the state statute—nor in any state law called to our attention—which in the slightest degree supports the thought that defendants have launched the proceeding for mere general purpose of investigation; to find out what may be found out, and then determine what, if anything, and how, it will be done. The defendants

are hardly in a position to say that they do not know, or believe, or are willing to assert that their proceeding is not what it professes to be; or that they do not intend to pursue the power whose exercise they have already undertaken. Nor is it an answer to plaintiffs' challenge, that, on the merits, after hearing, the plaintiffs may prevail. Such challenge is of power to hear or determine the matter at all. In this situation equitable intervention may be awarded at once, provided, of course, it appears that a burden—substantial—of defending against an unauthorized proceeding, or of incurring liability for penalties upon refusal to submit to the exercise of the asserted state power is cast upon the complainant. We have no hesitation in finding that such conditions are here in probable · prospect unless restrained.

Whatever authority may be found in federal jurisdictions respecting this proposition, we may be well content to rest it upon well-considered cases in the Supreme Court of Wisconsin which recognize it as a guide to its courts of equity whenever a challenge of total want of power is directed against tribunals such as the defendants herein constitute.

An order may be entered awarding an injunction pending suit, the terms thereof to be settled upon notice.