# United States Court of Appeals for the Federal Circuit

2006-1646


LITECUBES, LLC,
and CARL R. VANDERSCHUIT,

Plaintiffs-Appellees,

v.


NORTHERN LIGHT PRODUCTS, INC.
(doing business as GlowProducts.com),

Defendant-Appellant.


Rudolph A. Telscher, Jr., Harness, Dickey & Pierce, P.L.C., of St. Louis, Missouri, argued for plaintiffs-appellees. With him on the brief were Matthew L. Cutler and Kara R. Yancey.

F. Ross Boundy, Davis Wright Tremaine LLP, of Seattle, Washington, argued for defendant-appellant. With him on the brief was Robert J. Carlson, Christensen O'Connor Johnson Kindness PLLC, of Seattle, Washington. Of counsel on the brief was Kevin P. Anderson, Wiley Rein LLP, of Washington, DC. Of counsel was Julian D. Forman, Davis Wright Tremaine LLP, of Seatte, Washington.

Appealed from: United States District Court for the Eastern District of Missouri

Judge E. Richard Webber

# United States Court of Appeals for the Federal Circuit

2006-1646

LITECUBES, LLC, and CARL R. VANDERSCHUIT,

Plaintiffs-Appellees,

v.

NORTHERN LIGHT PRODUCTS, INC.
(doing business as GlowProducts.com),

Defendant-Appellant.

Appeal from the United States District Court for the Eastern District of Missouri in case no. 4:04-CV-00485, Judge E. Richard Webber.

_____

DECIDED: April 28, 2008

_____

Before NEWMAN, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and GAJARSA, <u>Circuit Judge</u>.

GAJARSA, <u>Circuit Judge</u>.

This patent and copyright case requires that we clarify the often-confused boundary between elements of a federal claim, which must be established before relief can be granted, and the requirements for establishing subject matter jurisdiction. Plaintiffs-Appellees Litecubes, LLC and Carl R. Vandershuit (collectively "Litecubes"), brought an action in the U.S. District Court for the Eastern District of Missouri alleging patent and copyright infringement by Defendant-Appellant Northern Lights Products, Inc., doing business as GlowProducts.com ("GlowProducts"). The district court entered

a judgment against GlowProducts after a jury verdict of copyright and patent infringement. Subsequently, GlowProducts filed a motion to dismiss the case for lack of subject matter jurisdiction on the grounds that it did not sell the allegedly infringing products within the United States, nor import the products into the United States. The district court denied the motion on the grounds that GlowProducts did import the goods into the United States.

GlowProducts appeals the denial of its motion to dismiss for lack of subject matter jurisdiction. We affirm the district court's denial of the motion to dismiss, but do so on different grounds. The district court erred in treating the issue of whether the goods had been imported into the United States as an issue impacting its subject matter jurisdiction. A plaintiff must prove that allegedly infringing activity took place in the United States to prevail on claims of patent or copyright infringement, but as with any other element of the claims, failure to do so does not divest the federal courts of subject matter jurisdiction over the action.

We also affirm the district court's denial of GlowProducts' motion for a judgment as a matter of law. Substantial evidence supports the jury's finding of infringement.

We have jurisdiction to hear the appeal pursuant to 28 U.S.C. 1295(a)(1).

I.
A.

Vanderschuit is the owner and founder of Litecubes, and the inventor and owner of U.S. Patent No. 6,416,198 (the "'198 patent"). The '198 patent discloses an illuminatable novelty item that can be placed in beverages, i.e., a lighted artificial "ice cube." Litecubes is the licensee of the '198 patent and the owner of a registered copyright on the Litecube (the "Litecube Copyright").

Litecubes asserted three independent claims from the '198 patent, claims 1, 16, and 31. Claim 1 claims:

An illuminatable beverage accessory device comprising:

a. at least one light source;

b. at least one power source switchably connected to said light source;

c. a cartridge having a light-source chamber to contain said light source, a power-source chamber below said light-source chamber, and two wire lead channels on the cartridge underside and in communication with said light-source chamber;

d. a lid under said cartridge, said lid having a lid chamber mating with said power-source chamber to thereby contain said power-source therein and further having a power-switching means for powering said at least one light source into and from an on-light mode into and from an off-light mode;

e. a housing covering said cartridge and said lid such that a cavity is defined therein and a water-tight integrity is maintained within said housing; and

f. a filler within said cavity, <u>said filler adapted to retain heat when said device is heated</u>.

'198 patent cols. 7-8 (emphasis added). Claim 16 is identical to claim 1 except that subpart (f) requires "a filler within said cavity, said filler adapted to retain cold when said device is cooled." <u>Id</u>. cols. 8-9. Claim 31 differs from claims 1 and 16 in that (a) it does not require a filler adapted to retain heat or cold, and (b) it requires that the power source "reciprocally translate . . . from an open light-on mode to a closed light-off mode." <u>Id.</u> cols. 9-10.

At a <u>Markman</u> hearing, the district court construed the claim 1 term "a filler within said cavity, said filler adapted to retain heat when said device is heated" to mean "filler within said cavity, <u>said filler made suitable to or fit for the specific use of retaining heat</u>

when said device is heated." Litecubes v. N. Light Prods., Inc., No. 4:04cv00485 (E.D. Mo. March 7, 2005) ("Markman Order") (emphasis added). Similarly, the district construed the relevant term in claim 16 to mean "filler within said cavity, said filler made suitable to or fit for the specific use of retaining cold when said device is cooled." Id. (emphasis added). Neither party challenges these constructions on appeal.

B.

GlowProducts is a Canadian corporation operating from its offices in Victoria, British Columbia, which acquires novelty items from Chinese manufacturers and then sells the items primarily in North America. GlowProducts does not have offices, facilities, or assets in the United States. Evidence at trial, however, established that GlowProducts sold the accused products directly to customers located in the United States and that GlowProducts would ship the products, f.o.b.,[1] from its Canadian offices to its customers in the United States.

Two types of products sold by GlowProducts are at issue, the EXA cubes and the ICM cubes (which include the "8 Mode Multi Cube" and the "3 Setting Flashing Lighted Ice Cube"). Both products are artificial ice cubes containing an L.E.D. and battery. The EXA cubes are nearly identical to the Litecube product ("the Litecube") and include a power source that can "reciprocally translate . . . from an open light-on mode to a closed light-off mode," '198 patent cols. 9-10. GlowProducts does not allege any error on the merits in the jury's finding that the "EXA" cube infringed claim 31; nor does it contest the merits of the jury's finding that the EXA cube infringes the Litecube Copyright.

---

[1] "F.o.b" or "free on board" is "a method of shipment whereby goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer." MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1374 n.3 (Fed. Cir. 2005).

The ICM cubes are a different shape than the Litecube and, thus, were not alleged to have infringed the Litecube Copyright. Nor do they have a reciprocally translating power source as required by claim 31. Accordingly, at issue at trial was whether they infringe claims 1 and 16 of the '198 patent. In dispute was only whether the ICM cubes meet the limitation that the cube contain a filler adapted to retain heat or cold when the device is heated or cooled. GlowProducts concedes that the ICM cubes meet all of the remaining limitations of claims 1 and 16.

C.

Litecubes filed this action in April 2004. A five-day jury trial was held in October 2005. Midway through trial, GlowProducts raised for the first time the issue of subject matter jurisdiction, arguing that the trial court did not have jurisdiction over the claims because there was no evidence that at the time the lawsuit was brought GlowProducts had made any sales in the United States or imported products into the United States. Trial Tr. vol. III 169. GlowProducts' theory was that because its sales to United States' customers were shipped f.o.b., the sales took place in Canada and that it was the customer who imported the goods into the United States.

After the trial had concluded and the jury entered a verdict of willful infringement, GlowProducts filed a motion to dismiss for lack of subject matter jurisdiction on these grounds. Neither Litecubes nor the district court challenged GlowProducts characterization of the issue as jurisdictional. Instead Litecubes opposed the motion on the grounds that there was ample evidence that GlowProducts had sold, offered to sell, or imported the allegedly infringing products to the United States. Id. The district court agreed. The court denied GlowProducts' motion, finding evidence of infringement

"sufficient to establish subject matter jurisdiction in this Court" because GlowProducts "clearly imported the accused products into the United States." Litecubes v. N. Light Prods., Inc., No. 4:04cv00485, at *3 (E.D. Mo. Aug. 25, 2006) (Memorandum and Order). The district court did not reach the issue of whether there were sales or offers to sell in the United States.[2] The district court also dismissed GlowProducts' motions for judgment as a matter of law ("JMOL"), concluding that substantial evidence supported the jury verdict. Id. at *12

After the district court issued a final judgment, GlowProducts appealed. In their initial briefing to this court, both parties assumed, without any analysis, that the issue of whether there was allegedly infringing activity in the United States was jurisdictional. However, because we have an independent obligation to properly determine our own jurisdiction, the panel requested that the parties be prepared to discuss at oral argument:

> Whether failing to establish that an alleged infringer "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention" is sufficient to divest the federal courts of subject matter jurisdiction over a patent infringement action, or instead whether the location of the allegedly infringing activity is a factual element of the claim which must be proven to show patent infringement but which does not affect the subject matter jurisdiction of the federal courts.

---

[2] Litecubes had not initially pled infringement based on importation, relying instead only on the sale and offer to sell prongs of § 271. However the court allowed Litecubes leave to amend their complaint to include importation (and held that this amendment would relate back to the initial filing) because the issue was raised at trial.

Letter to Parties (Nov. 29, 2007).[3] At oral argument, Litecubes argued for the first time that the issue was not one of subject matter jurisdiction, but should properly be considered an element of the claim. GlowProducts did not provide any authority to the contrary, suggesting only that it was "not an easy question."[4]

II.

Subject matter jurisdiction is a question of law that we review de novo. Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998) ("Every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' . . . ." (quoting Mitchell v. Maurer, 293 U.S. 237, 244 (1934))). Pursuant to 28 U.S.C. § 1338(a), "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." Under what is known as the "well-pleaded complaint rule," subject matter jurisdiction exists if a "well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." AT&T Co. v. Integrated Network Corp., 972 F.2d 1321,

---

[3] The parties were also asked to address whether the extraterritorial scope of the Copyright Act was an issue of subject matter jurisdiction and whether that issue should be decided under the Eighth Circuit's or this Circuit's law.

[4] Both parties suggested that if the issue was not jurisdictional, this court could still consider whether there was sufficient evidence that the allegedly infringing acts took place within the United States by reviewing the district court's denial of Litecubes' motion for JMOL on this issue, despite Litecubes' failure to appeal the denial of JMOL on this ground.

1323-24 (Fed. Cir. 1992) (quoting <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 808 (1988)).

Litecubes alleged in its complaint that GlowProducts violated 35 U.S.C. § 271(a), which provides that "[e]xcept as otherwise provided . . . whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent." It is beyond dispute that this statute creates a federal cause of action for patent infringement over which the district courts have subject matter jurisdiction under § 1338(a).[5] And Litecubes, as GlowProducts concedes, properly pled every element of a § 271(a) claim, alleging in Count I of its complaint that GlowProducts has infringed the '198 patent by "offering for sale and/or selling in the United States and in this judicial district illuminatable beverage accessories" that "infringe one or more claims of the '198 patent." Compl. ¶ 26.

Nevertheless, GlowProducts argues that even though Litecubes' well-pleaded complaint establishes that federal patent law creates the cause of action, there is no subject matter jurisdiction over this suit because Litecubes has failed to prove that GlowProducts sold or offered to sell products in the United States or imported products into the United States.

Subject matter jurisdiction does not fail simply because the plaintiff might be unable to ultimately succeed on the merits. <u>See</u> <u>Steel Co.</u>, 523 U.S. at 89 ("[J]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of

---

[5] The district court also has jurisdiction over § 271(a) causes of action under 28 U.S.C. § 1331, the general federal question jurisdictional statute, to which the same well-pleaded complaint rule applies, <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 27-28 (1983).

2006-1646                                    8

action on which petitioners could actually recover." (quoting <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946))). To the contrary, "[i]t is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, <u>i.e.</u>, the courts' statutory or constitutional <u>power</u> to adjudicate the case." <u>Id.</u> (emphasis in original). Thus, a failure to prove the allegations alleged in a complaint requires a decision on the merits, not a dismissal for lack of subject matter jurisdiction. <u>See, e.g.</u>, <u>Binderup v. Pathe Exch., Inc.</u>, 263 U.S. 291, 305 (1923). Indeed even if, unlike here, the complaint fails to allege a cause of action upon which relief can be granted, this "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." [6] <u>Bell</u>, 327 U.S. at 682.

As the Supreme Court long ago held:

> A complaint setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court; and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it.

<u>Binderup</u>, 263 U.S. at 305; <u>see also</u> <u>Christianson</u>, 486 U.S. at 807-08 (noting the longstanding rule that "in order to demonstrate that a case is one 'arising under' federal patent law 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction,

---

[6] There is a limited and narrow exception to <u>Bell</u>'s general rule if the federal claim pled is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." <u>Steel Co.</u>, 523 U.S. at 89. Dismissal for lack of subject matter jurisdiction on the grounds that the federal claim asserted is not colorable, however, is "proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" <u>Id.</u> (quoting <u>Oneida Indian Nation of N.Y. v. County of Oneida</u>, 414 U.S. 661, 666 (1974)). This is clearly not our case.

or sustained by the opposite construction of these laws.'" (quoting Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 259 (1897))); Montana-Dakota Utils. Co. v. N.W. Pub. Serv. Co., 341 U.S. 246, 249 (1951) ("Petitioner asserted a cause of action under the Power Act. To determine whether that claim is well founded, the District Court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit, as well as to decide that it has.").

Accordingly, there can be no question that Litecubes' allegations, which state a claim under the patent laws, are sufficient to create general federal question jurisdiction. Moreover, while Congress can restrict the federal question jurisdiction granted in § 1331 or § 1338, for example by mandating that a certain threshold fact be established in order for the federal court to have jurisdiction over a particular cause of action,[7] the Supreme Court has recently reiterated in a unanimous opinion that it is critical to distinguish between a statutory limitation that is truly jurisdictional and one that is simply an element of the claim that must be established on the merits. Arbaugh v. Y & H Corp., 546 U.S. 500 (2006). As the Supreme Court explained, there are important

---

[7]     "[C]ertain statutes confer subject-matter jurisdiction only for actions brought by specific plaintiffs, e.g., 28 U.S.C. § 1345 (United States and its agencies and officers); 49 U.S.C. § 24301(l)(2) (Amtrak), or for claims against particular defendants, e.g., 7 U.S.C. § 2707(e)(3) (persons subject to orders of the Egg Board); 28 U.S.C. § 1348 (national banking associations), or for actions in which the amount in controversy exceeds, e.g., 16 U.S.C. § 814, or falls below, e.g., 22 U.S.C. § 6713(a)(1)(B), 28 U.S.C. § 1346(a)(2), a stated amount." Arbaugh, 546 U.S. at 516. And at times Congress has enacted a separate provision limiting the scope of the § 1331 in narrow circumstances.  See, e.g., Weinberger v. Salfi, 422 U.S. 749, 756-61 (holding that 42 U.S.C. § 405(h) bars 28 U.S.C. § 1331 jurisdiction over suits to recover Social Security benefits).

consequences of labeling a requirement as a "determinant of subject-matter jurisdiction, rather than an element of [the plaintiff's] claim for relief":

> First, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." Moreover, courts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party. . . .
>
> Second, in some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own. If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.
>
> Third, when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety. . . . In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.

Id. at 514 (internal citations omitted).

The Court cautioned that courts have at times erroneously called a limitation jurisdictional that was actually simply an element of the claim:

> On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous. "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination."

Id. at 511 (quoting 2 J. Moore et al., Moore's Federal Practice § 12.30[1], at 12-36.1 (3d ed. 2005)); see also Steel Co., 523 U.S. at 90 ("'Jurisdiction . . . is a word of many, too many, meanings'"); Montana-Dakota Utils. Co., 341 U.S. at 249 (holding that the Court of Appeals erred in reversing a judgment of the district court on the grounds that there was no subject matter jurisdiction, noting that "[a]s frequently happens where jurisdiction

depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action"). To prevent such mischaracterizations, the Arbaugh Court issued a "readily administrable bright line rule": "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed . . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character." Id. at 516.

Here, Congress has not clearly stated in 35 U.S.C. § 271 or in any other statute that § 271's requirement that the infringing act happen within the United States is a threshold jurisdictional requirement as opposed to an element of the claim. To the contrary, the statute, which creates liability for patent infringement on "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore" in no way distinguishes the territorial limitation from any of the other elements necessary to show infringement. Id.

In most situations our analysis would end there—Arbaugh's bright line rule mandates that the requirement that the allegedly infringing act occur in the United States be treated as non-jurisdictional. However, at least pre-Arbaugh, there has been a particular tendency among courts and litigants to label limitations on the extraterritorial reach of a statute as "jurisdictional."[8] We therefore must consider whether there is

---

[8]    See, e.g., McBee v. Delica, 417 F.3d 107 (1st Cir. 2005) (Lanham Act); United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942 (7th Cir. 2003) (en banc) (Foreign Trade Antitrust Improvement Act); Mannington Mills, Inc. v. Congoleum Corp., 595 F.2d 1287 (3d Cir. 1979) (Sherman Antitrust Act); Des Brisay v. Goldfield Corp., 549 F.2d 133 (9th Cir. 1977) (Securities Act).

something unique about a limitation that determines the extraterritorial scope of a statute that converts what would otherwise be a factual element of the claim into a restriction on the subject matter jurisdiction of the federal courts. We conclude that there is not.

There is no absolute rule prohibiting the extraterritorial reach of federal statutes. Rather, it is well-established that "Congress has the authority to enforce its laws beyond the territorial boundaries of the United States." E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991). Whether Congress did extend any particular statute to reach extraterritorial activity is simply a question of statutory interpretation.[9] If Congress has extended a cause of action to reach extraterritorial activity, there is no independent bar to the federal courts adjudicating such extraterritorial disputes, providing a court has personal jurisdiction over the defendants.[10] Thus, in these respects, a limitation on the extraterritorial scope of a statute is no different than any other element of a claim which must be established before relief can be granted under a particular statute.

Congressional authority to regulate extraterritorial behavior does implicate a type of "jurisdiction"—the "jurisdiction to prescribe" recognized under international law. The "jurisdiction to prescribe" is a state's authority to "make its law applicable to the activities, relations, or status of persons," including its "authority to subject foreign

---

[9] While there is a presumption that Congress does not intend a statute to apply to extraterritorial activity, it is only a presumption and can be rebutted if Congress has clearly expressed an affirmative intention to the contrary. Id.

[10] The personal jurisdiction requirement—which prevents federal courts from exercising authority over defendants without sufficient contacts with the United States, see Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)—is an important limitation on the jurisdiction of the federal courts over purely extraterritorial activity that is independent of the extraterritorial reach of a federal statute or the court's subject matter jurisdiction. Here, there is no dispute that the district court had personal jurisdiction over GlowProducts.

interests or activities to its laws." Restatement (Third) of the Foreign Relations Law of the United States § 401 & comment a (1987) ("Restatement"); see also Hartford Fire Ins. Co. v. California, 509 U.S. 764, 813 (1993) (Scalia, J., dissenting).[11] But as the influential Restatement recognizes, this type of "jurisdiction" is distinct from a court's "jurisdiction to adjudicate" or from the domestic law concept of the "subject matter jurisdiction" of federal courts. Restatement § 401 comments a & c, § 421 comments a & j.[12]

Emphasizing this distinction, the Supreme Court held in Lauritzen v. Larsen, 345 U.S. 571 (1953), that the extraterritorial scope of a statute was an element of the claim, not a requirement of subject mater jurisdiction. In Lauritzen, the Court considered whether the Jones Act, which on its face created a cause of action for "any seaman who shall suffer personal injury in the course of his employment," 46 U.S.C. § 688 (1952), applied to a dispute between two Danish citizens that took place on a Danish ship in

---

[11] It is well-established that international law does not provide an independent limitation on Congress' legislative authority. See, e.g., Lauritzen v. Larsen, 345 U.S. 571, 578 (1953). But it is the international law concept of territorial limitations on the jurisdiction to prescribe that underlays the longstanding presumption that Congress does not intend its statute to have extraterritorial effect. See, e.g., F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 163 (2004) ("[T]his Court ordinarily construes ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations."); The Charming Betsy, 6 (Cranch) U.S. 64, 118 (1804) (Marshall, C.J.). Thus, as discussed above, the question is generally whether Congress has exercised its prescriptive jurisdiction to reach extraterritorial behavior, not whether it has such jurisdiction. Of course, more generally, Congress does have domestic limitations on its jurisdiction to prescribe, or what is also called its legislative jurisdiction—it can only exercise those powers given to it in Article I of the U.S. Constitution. Here this power is provided by Article I Section 8's grant of power "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."

[12] The Restatement notes that some courts have used the term "subject matter jurisdiction" to refer to what it calls jurisdiction to prescribe. Recognizing the confusion this engenders, the Restatement avoids the use of the term "subject matter jurisdiction." Restatement § 401 comment c.

2006-1646                                    14

international waters. Relying on the long-standing presumption that, if possible, statutes should be construed consistent with international law, the Court held as a matter of statutory construction that the Jones Act did not reach such extraterritorial activities. Lauritzen, 345 U.S. at 577-93. Nevertheless, the Court dismissed the defendant's contention that the district court was without jurisdiction over the claim. Noting that the defendant had not objected to personal jurisdiction, the Court explained, "[a]s frequently happens, a contention that there is some barrier to granting plaintiff's claim is cast in terms of an exception to jurisdiction of subject matter. A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact." Id. at 575 (citing Montana-Dakota Utils. Co., 341 U.S. at 249); see also Hartford Fire Ins. Co., 509 U.S. at 812-13 (Scalia, J., dissenting) ("It is important to distinguish two distinct questions raised by this petition: whether the District Court had jurisdiction, and whether the Sherman Act reaches the extraterritorial conduct alleged here. . . . Respondents asserted nonfrivolous claims under the Sherman Act, and 28 U.S.C. § 1331 vests district courts with subject-matter jurisdiction over cases 'arising under' federal statutes. . . . The second question—the extraterritorial reach of the Sherman Act—has nothing to do with the jurisdiction of the courts. It is a question of substantive law turning on whether, in enacting the Sherman Act, Congress asserted regulatory power over the challenged conduct.").

Notably, while some courts have, notwithstanding Lauritzen, at times referred to the extraterritorial scope of a particular statute as a jurisdictional requirement, in Arbaugh, the Supreme Court pointed to one of its own decisions, E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244 (1991), in which it had characterized the extraterritorial

effect of Title VII as jurisdictional, as an example of a "drive-by jurisdictional ruling[]" in which it had been "less than meticulous" in distinguishing between subject matter jurisdiction and an ingredient of a claim for relief. Arbaugh, 546 U.S. at 511. The Court explained that such cases "should be accorded 'no precedential effect' on the question of whether the federal court had the authority to adjudicate the claim in suit." Id. Arbaugh's treatment of Arabian American Oil, coupled with the Court's holding in Lauritzen, strongly suggests that limitations on the extraterritorial reach of statutes are subject to Arbaugh's general rule—they should be considered elements of the claim unless Congress has clearly labeled the limitation jurisdictional. Id. at 516.[13]

Consistent with this understanding, while our court has never addressed the issue explicitly, we have been able to find no instance in which this court has treated the question of whether allegedly infringing activity took place within the United States as a question of subject matter jurisdiction. Rather, either the question has arisen in the context of whether there was personal jurisdiction, see, e.g., Beverly Hills Fan Co. v.

---

[13] The Supreme Court's holding in Arbaugh, as well as the application of Arbaugh's rule to the extraterritorial scope of a statute, was anticipated in significant respects by the dissent in the Seventh Circuit's en banc decision in United Phosphorous v. Angus Chemical Co., 322 F.3d 942, 953 (7th Cir. 2003) (en banc) (Wood, J., dissenting). Judge Wood, writing for herself and three other members of the court concluded the Foreign Trade Antitrust Improvements Act ("FTAIA"), which states that the Sherman Act "shall not apply" to conduct involving foreign trade or commerce unless that conduct has a "direct, substantial and reasonably foreseeable effect" on U.S. commerce, should be construed as an element of an antitrust claim, not an issue of subject matter jurisdiction. Persuasively, Judge Wood explained that "the fact that the FTAIA does not contain a clear congressional statement that it is intended to restrict the subject matter jurisdiction of the federal courts (or for that matter even a brief mention of the term 'jurisdiction') should be enough to resolve the question before us." Id. at 955; see also id. at 954, 953-65 (faulting the majority for failing to properly distinguish between the subject matter jurisdiction of the courts and Congress's prescriptive jurisdiction and arguing that "the 'subject matter jurisdiction' characterization is inconsistent with the Supreme Court's decision in Steel Co.")

Royal Sovereign Corp., 21 F.3d 1558, 1569-72 (Fed. Cir. 1994), which is not contested here, or the issue has been treated as an element of the claim that is a question of fact for the jury to decide, see, e.g., Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1258 (Fed. Cir. 2000) (affirming the district court's grant of summary judgment on the grounds that there had been no offer to sell in the United States because the plaintiff "offers no evidence upon which a reasonable jury could find in its favor" on the issue); MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1377 (Fed. Cir. 2005) (affirming a grant of summary judgment of no direct infringement under 35 U.S.C. § 271(a) because "MEMC has presented no evidence demonstrating that [the alleged infringer] sold the accused wafers . . . in the United States").

We therefore conclude that Arbaugh's rule governs the instant inquiry, and we find, consistent with this court's prior implicit treatment, that Congress has not clearly stated that any of the limitations in § 271 are jurisdictional. Accordingly, we hold that whether the allegedly infringing act happened in the United States is an element of the claim for patent infringement, not a prerequisite for subject matter jurisdiction.[14]  Given this holding, we affirm the district court's denial of GlowProducts' motion to dismiss the patent claims for lack of subject matter jurisdiction, but do so on different grounds. There was no need for the district court to consider whether GlowProducts had imported products into the United States in order to determine whether it had jurisdiction over the case.  Litecubes, by alleging a violation of § 271, has properly invoked federal question

---

[14]    Foreign litigants nevertheless have substantial protection if the activity complained of took place wholly outside of the United States. In many such cases, the court may not have personal jurisdiction over the defendant. Moreover, such cases will often be able to be quickly disposed of in a Rule 12(b)(6) motion to dismiss for failure to state a claim or in a motion for summary judgment.

jurisdiction under § 1331 and § 1338. This jurisdiction does not depend on whether Litecubes is able to succeed on the merits in proving all of the elements of patent infringement that it alleged in the complaint.

III.

GlowProducts also argues that the district court had no subject matter jurisdiction over Litecubes' copyright claims as the U.S. copyright laws have no extraterritorial reach. This Circuit "applies copyright law as interpreted by the regional circuits," here the Eighth Circuit. Pods, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1368 (Fed. Cir. 2007) (quoting Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1368 (Fed. Cir. 2006)). However "[o]n matters relating to this court's jurisdiction, we apply Federal Circuit law, not that of the regional circuit from which the case arose." Nystrom v. TREX Co., 339 F.3d 1347, 1350-51 (Fed. Cir. 2003). The question raised here, whether the lack of extraterritorial reach of the Copyright Act limits the subject matter jurisdiction of the federal courts, implicates the substance of the Copyright Act but is ultimately a question of our jurisdiction. Accordingly, we believe that we have an independent obligation to determine for ourselves whether jurisdiction is proper, and we apply Federal Circuit law.[15]

Under the U.S. Copyright Act, the owner of copyright has the exclusive right to "distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. In addition, the Act provides that "[i]mportation into the United States, without the authority of the owner of

---

[15]       Even if we were to apply Eighth Circuit law, we would reach the same result. Neither this court nor the Eighth Circuit has decided the issue presented. Thus our analysis of how the Eighth Circuit likely would decide the issue would be based on the same analysis of Supreme Court and other circuit precedent as here.

copyright under this title, of copies . . . of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies . . . under section 106 [17 U.S.C. § 106]." Id. § 602. By its terms § 106 does not require that the distribution of the goods occur within the United States. It has long been established, however, that the Copyright Act does not "reach acts of infringement that take place entirely abroad." Subafilms Ltd. v. MGM-Pathe Commn'ns Co., 24 F.3d 1088, 1098 (9th Cir. 1994) (en banc); see also, e.g., The Robert Stigwood Group Ltd. v. O'Reilly, 530 F.2d 1096, 1101 (2d Cir. 1976) ("Copyright laws do not have extraterritorial operation.").

Both parties stated at oral argument that the Patent Act and the Copyright Act should be interpreted consistently, and thus that if the Patent Act's requirement that the infringing act take place in the United States is not a jurisdictional requirement, the exclusion from the Copyright Act of acts taking place entirely abroad should also not be jurisdictional. We agree.

The principles and case law discussed above, which led us to conclude that the Patent Act's territorial requirement is an element of the claim that must be established to prove infringement, but not a requirement for subject matter jurisdiction, apply equally to the Copyright Act's limitation on the extraterritorial reach of the statute. As discussed, whether the territorial limitation is explicit in the statute, as in the Patent Act, or implied based on the presumption that Congress does not intend its acts to have extraterritorial effect, as in the Copyright Act, the limit on the extraterritorial reach of a statute is a question of statutory interpretation—what did Congress intend the scope of its exercise of prescriptive jurisdiction to be—not an independent limitation on the federal court's authority. And Arbaugh's bright-line rule applies. That is, whether an accused action is

within the extraterritorial limitation should be treated as an element of the claim, not a predicate for subject matter jurisdiction, unless Congress has clearly provided that the limitation is jurisdictional. See Arbaugh, 546 U.S. at 516 ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as non-jurisdictional in character."); Lauritzen, 345 U.S. 571 (holding that the Jones Act, which on its face had no territorial limitations, did not reach purely extraterritorial activities, but that this requirement was not a limitation of the jurisdiction of the federal courts); see also supra Part II.

As in the patent context, in its brief to this court and at the district court, GlowProducts assumed without any analysis that the lack of extraterritorial effect of the copyright laws is a question of subject matter jurisdiction rather than a question of whether a claim upon which relief can be granted has been established. But the cases it relies on provide minimal support for such a position.

GlowProducts' reliance on Subafilms, which it cites as its primary authority, is misplaced. While GlowProducts is correct that Subafilms is a leading case on the extraterritorial reach of the Copyright Act, Subafilms did not hold that the extraterritorial limitation limited the subject matter jurisdiction of the federal courts. Rather, Subafilms held that "the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act." 24 F.3d at 1099 (emphasis added). Moreover, Subafilms reaffirmed that "the existence of subject matter jurisdiction under 28 U.S.C. § 1338(a) is distinct as a general matter from the question of whether a valid cause of action is stated." Subafilms, 24 F.3d at 1091 n.5. The court

further recognized, without deciding, that <u>Peter Starr Production Co. v. Twin Continental Films</u>, 783 F.2d 1440 (9th Cir. 1986), which it overruled in part, may have erred in "framing the subject matter jurisdiction inquiry as coextensive with the question of whether the allegations in the complaint stated a good cause of action." <u>Subafilms</u>, 24 F.3d at 1091 n.5; <u>see also</u> <u>L.A. News Serv. v. Reuters Tel. Int'l, Ltd.</u>, 340 F.3d 926, 931 & n.9 (9th Cir. 2003) ("<u>Subafilms</u> reaffirmed that the copyright laws have no application beyond the U.S. border . . . . <u>Subafilms</u> also suggested that federal question jurisdiction under the copyright laws may not be coextensive with legislative jurisdiction under those laws, i.e., the reach Congress has chosen to give to American intellectual property statutes."). Similarly, none of the Second Circuit cases on which GlowProducts relies hold that the extraterritorial reach of the Copyright Act is a question of subject matter jurisdiction. <u>See, e.g.</u>, <u>The Robert Stigwood Group</u>, 530 F.2d at 1101 (holding that performances of the copyrighted work performed in Canada were properly excluded from the calculation of damages); <u>cf.</u> <u>Bassett v. Mashantucket Pequot Tribe</u>, 204 F.3d 343, 349 (2d Cir. 2000) (holding that the federal courts have subject matter jurisdiction if a suit arises under the Copyright Act, which occurs when "(1) [T]he complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction; or, (2) [T]he complaint . . . asserts a claim requiring construction of the Act . . . ." (internal quotation marks omitted)).

A least one circuit has treated the extraterritorial effect of the copyright laws as a question of subject matter jurisdiction. <u>See</u> <u>Palmer v. Braun</u>, 376 F.3d 1254, 1258 (11th Cir. 2004) ("[I]t is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving federal courts

jurisdiction over the action."). In <u>Palmer</u>, however, the Eleventh Circuit did not have the benefit of <u>Arbaugh</u>'s recent clarification of the boundary between subject matter jurisdiction and elements of the claim nor its suggestion that this confusion between subject matter jurisdiction and elements of a claim has extended to the issue of the extraterritorial scope of a statute. <u>Arbaugh</u>, 546 U.S. at 511. Moreover, <u>Palmer</u> simply assumed the issue was a jurisdictional one, without any analysis of whether the question was more properly considered a question on the merits. We decline to follow the Eleventh Circuit's approach.

There is no indication that Congress intended the extraterritorial limitations on the scope of the Copyright Act to limit the subject matter jurisdiction of the federal courts. Accordingly, we hold that the issue is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction, and we affirm the district court's denial of GlowProduct's motion for dismissal for lack of subject matter jurisdiction over the copyright claims.

IV.

In addition to filing the post-trial motion to dismiss, GlowProducts filed motions for judgment as a matter of law, arguing that substantial evidence did not support the jury verdicts of infringement for either the copyright or patent claims. In part, these motions were based on the same argument as the motion to dismiss—that Litecubes had failed to establish that any of the allegedly infringing acts took place within United States borders. Unlike the motion to dismiss, these JMOL motions were a procedurally correct mechanism to challenge the jury findings of infringement based on the location of the allegedly infringing activity. GlowProducts, however, has not appealed this aspect of its

JMOL motions. Accordingly, we ordinarily would consider the issue waived and decline to reach the issue. See SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived."). However, the circumstances here are rather unusual, and both parties at oral argument appeared to agree that if we concluded that the extraterritorial issue was not jurisdictional, we should consider the issue under the JMOL standard. Given this, and that the parties have fully briefed the issue, albeit under the incorrect rubric of subject matter jurisdiction, we exercise our discretion, see id. at 1320 n.9 (noting that the court maintains discretion to consider arguments not properly raised in the briefs), to consider whether the district court erred in denying Litecubes' JMOL motions on the ground that the evidence was insufficient to establish a sale or offer for sale of the allegedly infringing products within the United States or importation of the products to the United States.

When reviewing a district court's denial of a JMOL motion, "we reapply the district court's JMOL standard anew." Juicy Whip v. Orange Bang, 292 F.3d 728, 736 (Fed. Cir. 2002); Chicago Title Ins. Co. v. Resolution Trust Corp., 53 F.3d 899, 904 (8th Cir. 1995) ("We review the grant or denial of a motion for judgment as a matter of law de novo, using the same standard employed by the district court."). "Therefore, for [a party] to prevail on appeal it must prove that the jury's factual findings were not supported by substantial evidence or that the facts were not sufficient to support the conclusions necessarily drawn by the jury on the way to its verdict." Mycogen Plant Sci., Inc. v. Monsanto Co., 243 F.3d 1316, 1331 (Fed. Cir. 2001) (quoting Tec Air, Inc. v. Denso Mfg. Mich., Inc., 192 F.3d 1353, 1357 (Fed. Cir. 1999)); Jackson v. Prudential Ins. Co.,

736 F.2d 450, 453 (8th Cir. 1984) ("[JMOL] motions should not be granted if reasonable persons could differ as to the conclusions to be drawn from the evidence. . . . The trial court has not erred if there is substantial evidence -- more than a mere scintilla of evidence -- to support a verdict in favor of the party opposing such a motion." (internal citations omitted)).

Although the district court based its ruling on a finding that GlowProducts imported its goods into the United States, we believe that the preferable initial inquiry, given the facts of this case and our prior established law, is whether there was a sale within the United States. It is uncontested that GlowProducts sold and shipped the allegedly infringing products directly to customers located in the United States. GlowProducts bases its argument that these were not sales in the United States on the grounds that the products were shipped f.o.b., and thus title over the goods were transferred while the goods were still in Canada. Our case law, however, is inconsistent with such a theory, and we conclude that there is substantial evidence of a sale within the United States for the purposes of § 271.

In North American Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576 (Fed. Cir. 1994), a personal jurisdiction case, this court rejected the notion that simply because goods were shipped f.o.b., the location of the "sale" for the purposes of § 271 must be the location from which the goods were shipped. Id. at 1579 (holding that the "tort" of patent infringement is defined by § 271 and occurs "where the allegedly infringing sales are made"). To the contrary, we determined that the sale also occurred at the location of the buyer. Id. The court recognized that

> unlike the 'making' and the 'using' of an infringing article, which as purely physical occurrences are relatively straightforward to place, the 'selling' of

an infringing article has both a physical and a conceptual dimension to it. That is to say, it is possible to define the situs of the tort of infringement-by-sale either in real terms as including the location of the seller and the buyer and perhaps the points along the shipment route in between, or in formal terms as the single point at which some legally operative act took place, such as the place where the sales transaction would be deemed to have occurred as a matter of commercial law.

Id. North American Philips rejected the formalistic approach and concluded that regardless of whether the goods were shipped f.o.b., "to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there.)." Id. (explaining that "to hold otherwise would exalt form over substance in an area where the Supreme Court has generally cautioned against such an approach" (citing Burger King Corp. v. Rudzewic, 471 U.S. 462 (1985))). Moreover, the court explained that "even if we were to conclude that a 'mechanical' test might be appropriate here for some reason, appellee has failed to explain why the criterion should be the place where legal title passes rather than the more familiar places of contracting and performance. Appellees have pointed to no policy that would be furthered by according controlling significance to the passage of legal title here." Id.; see also McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 64 (1940) ("[T]he place where the title passes has not been regarded as the test of the interstate character of a sale. We have frequently decided that where a commodity is mined or manufactured in one State and in pursuance of contracts of sale is delivered for transportation to purchasers in another State, the mere fact that the sale is f.o.b. cars in the seller's State and the purchaser pays the freight does not make the sale other than interstate."); cf. Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1258 (Fed. Cir. 2000) (looking to federal law to

interpret "offer to sale" under § 271 and concluding that it "is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority").

While North American Philips dealt with the issue of where a "sale" took place under § 271 in the context of personal jurisdiction, we see no basis for construing the location of a "sale" differently when the issue is whether the plaintiff has established that the sale took place within the United States for the purposes of infringement. Indeed, this court has already relied on North American Philips's interpretation of § 271 when determining whether summary judgment of non-infringement was appropriate on the grounds that there was no sale in the United States. See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1377 (Fed. Cir. 2005) ("North American Philips . . . noted that in some cases the criterion for determining the location of a "sale" under section 271(a) is not necessarily where legal title passes; the 'more familiar places of contracting and performance' may take precedence over the passage of legal title. Thus simply because an article is delivered 'free on board' outside of the forum, a sale is not necessarily precluded from occurring in the forum."); see also Rotec, 215 F.3d at 1254. In MEMC, as here, the issue was whether the defendant's actions could be construed by a reasonable jury to constitute a sale or offer to sell in the United States. It was undisputed that the defendant SUMCO manufactured the accused chip wafers in Japan and then sold the product to a Japanese company, Samsung Japan; Samsung Japan then sold the products to Samsung Austin, in the United States. Relying on North American Philips, the court found it "significant[]" that "there was no evidence that 'contracting and performance' took place in the United States." MEMC, 420 F.3d at 1377. The court explained that there was no evidence demonstrating a sale

directly from SUMCO to Samsung Austin, and that "all of the essential activities" of the sale between SUMCO and Samsung Japan took place in Japan. Id. Accordingly, the court found no error in the district court's grant of summary judgment of non-infringement. Id. In contrast, here it is undisputed that GlowProducts sold the products directly to customers in the United States. Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under North American Philips and MEMC there is substantial evidence to support the jury's conclusion that GlowProducts sold the accused cubes within the United States.

Since we find substantial evidence of a sale within the United States, we need not determine whether there was also an offer to sell within the United States or importation into the United States.

We also conclude that substantial evidence supported the jury verdict of copyright infringement. Although we apply Eighth Circuit law to the question of whether GlowProducts' activities are within the scope of the Copyright Act, the Eighth Circuit has not spoken on the extraterritorial scope of the Act. We therefore "need to predict how the[Eighth Circuit] would have decided the issue." Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1575 (Fed. Cir. 1984).

Section 106(3) of the Copyright Act makes it an act of infringement to "distribute" copies of the copyrighted work "to the public by sale." 17 U.S.C. § 106(3); Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d 426, 429 (8th Cir. 1993); 2-8 Nimmer on Copyright § 8.11 (2007) ("The copyright owner . . . has the exclusive right publicly to sell, give away, rent or lend any material embodiment of his work."). Neither

party has argued that courts should interpret identical, generalized terms such as "sale" or "importation" differently between the Copyright Act and the Patent Act. To the contrary, both parties rely on their arguments regarding the Patent Act to support their arguments for the applicability of the Copyright Act. See Appellants' Br. 25 ("GlowProducts does not 'import' under the Copyright Act for the same reasons it does not 'import' under the Patent Act."); Appellee's Br. 45 ("For the same reasons that jurisdiction exists under the Patent Act, jurisdiction similarly exists under the Copyright Act."). We agree that the term "sale" should be interpreted consistently in copyright and patent law, and accordingly, conclude that the Eighth Circuit would find substantial evidence of sales in the United States sufficient to uphold the jury's finding of liability under the Copyright Act.[16]

Moreover, the Copyright Act does not explicitly require that sales be "in the United States," and courts have generally held that the Copyright Act only does not reach activities that "that take place entirely abroad." Subafilms, 24 F.3d at 1098 (emphasis added); see 4-17 Nimmer on Copyright § 17.02 ("[A] distinction should be drawn between purely extraterritorial conduct, which is itself nonactionable, and conduct that crosses borders, so that at least a part of the offense takes place within the United States. . . . It may be concluded . . . that U.S. courts may entertain such multiterritorial infringement claims."). Thus for example, in Palmer, the Eleventh Circuit found that the Copyright Act applied when the alleged infringer, analogously to the instant case, sold copyrighted work from France to customers in the United States, and then shipped these works to the U.S. buyers. Palmer, 376 F.3d at 1258; see also GB Mktg. USA Inc.

---

[16] If there are arguments for interpreting the location of the "sale" for Copyright Act purposes differently than for the Patent Act, these have been waived.

v. Gerolsteiner Brunner GmbH & Co., 782 F. Supp. 763, 772-73 (W.D.N.Y. 1991), cited by Palmer, 376 F.3d at 1258 (holding that a bottle water distributor could maintain an action under the Copyright Act against a foreign bottler who applied labels to the bottles in Germany, when the labels were specifically designed for marketing in the United States and were sold to a company which imported the bottles to the United States). Substantial evidence supports the jury's conclusion that, by selling to customers in the United States, GlowProducts' distribution of the accused products has taken place, at least in part, in the United States.

We therefore affirm the denial of JMOL for the copyright claim.

V.

GlowProducts also argues that even assuming that the allegedly infringing activity was within the United States, the district court erred in refusing to issue a judgment as a matter of law on the question of patent infringement by the ICM cubes.

GlowProducts argues that JMOL was appropriate because the ICM cubes do not meet the limitation of claim 1 that requires the cubes to contain a "filler adapted to retain heat when said device is heated" or the limitation of claim 16 that the cubes contain a "filler adapted to retain cold when said device is cooled." The parties do not contest the propriety of the district court's claim construction. Therefore, the only issue is whether substantial evidence supports the jury's factual finding that GlowProducts' cubes met the contested claim limitations, which as construed require that the filler be "made suitable to or fit for the specific use of retaining heat when said device is heated" or "made suitable to or fit for the specific use of retaining cold when said device is cooled."

, at *5. We conclude there was substantial evidence to sustain the jury's finding.

A.

At trial, Dr. Kevin Trankler, a chemist with expertise in thermodynamics, testified as an expert witness on Litecube's behalf. Trankler concluded that after running various tests on the ICM cube to "determine. . . whether the filler material had the ability to retain cold over a period of time," J.A. at 927, it was his opinion that the filler in the cube "is adapted to retain heat or cold." J.A. at 937. He also testified that he was aware that "adapted" was defined by the court as requiring the filer be "suitable for or fit to the specific purpose of." J.A. at 928. Trankler's experiment demonstrated that after the ICM cube was placed in the freezer, the filler cooled to -6.1 C (below the freezing temperature of water), and that when the frozen cube was placed in room temperature water, the filler took approximately thirty minutes to return to room temperature. Trankler concluded based on these and similar results that the filler was adapted to retain heat or cold. He explained that insulators such as ceramics, wood, or Styrofoam would not be adapted to retain heat or cold because "they would warm up a lot faster" and "may not cool down to the same temperature either" as the ICM filler. J.A. at 931-32.[17]

In addition, Litecubes introduced excerpts from GlowProducts' website describing the accused cubes as being adapted to keep drinks warm or cool. For example, the website stated, "[t]he 8 Mode Multi-Cube is a great lighted ice cube for livening up your

---

[17] In their brief GlowProducts suggests that "Trankler admitted that comparable tests results for a sandwich 'would likely look the same.'" Appellants' Br. 30. This leaves out part of Trankler's testimony. When asked on cross examination what the curve (i.e., plot of temperature v. time) would look like for a sandwich, Trankler testified that he "suspect[ed] that the curve would look the same; it would still be a curve, but that the slope would be farther to the left." J.A. at 940.

drinks. Not only will it amuse your guests, but it will keep their drink warm or cool with its internal gel" and explained that "[t]his light up ice cube also comes with internal gel that can be heated or frozen to keep your drink warm or cool." J.A. at 6262-64.

Vanderschuit, Litecubes' founder, also testified that artificial ice cubes, including Litecube's own product, would never be able to match, nor were they intended to match, the cooling properties of an actual ice cube, but instead would simply slightly lower the temperature of a room temperature drink for twenty to thirty minutes or help maintain the temperature of a cooled drink for slightly longer.[18]

To rebut Trankler's testimony, GlowProducts called as its expert witness Dr. Ann Mescher. She admitted there was nothing technically wrong with Trankler's tests but suggested that "he simply didn't answer the question." J.A. at 995. According to Mescher, the appropriate question was whether the fillers "make a practical difference," i.e., in her words, whether they were "particularly suited for the specific purpose of keeping a hot drink hotter than it would be if it weren't there." J.A. at 992, 995. To answer this question, Dr. Mescher ran two tests and concluded that the filler had "no practical effect." In the first test, she placed a GlowProducts cube and a Litecube that had been refrigerated overnight in a glass of water that was also refrigerated overnight and compared the water temperature in these glasses to a control refrigerated glass of water without a cube. She found that neither the Litecube nor the GlowProducts cube had "a measurable impact on the rate at which the liquids heat." The validity of this test was called into question during cross examination by her admission that water was the

---

[18]    Supporting this contention was the fact that Litecube's own commercial embodiment of the patent performed identically to the GlowProducts' cubes in tests done by GlowProducts' expert.

substance most well-adapted to retain heat or cold at the relevant temperatures, and that if one used a cube that had water as the filler, it would also not show any measurable difference from the control. In her second experiment, she froze GlowProducts and Litecubes cubes in the freezer overnight to cool them to -28 C and then placed each in a room temperature glass of water. She found that that the cubes lowered the temperature of the water by about one degree and that it took about sixty minutes for the water to return to its initial temperature. She characterized these results as showing that the cubes had "no measurable impact." J.A. at 1022-23.

B.

As construed, the contested claim limitation required the jury to find that GlowProducts' cubes contained "filler made suitable to or fit for the specific use of retaining heat when said device is heated" or "filler made suitable to or fit for the specific use of retaining cold when said device is cooled." Markman Order, at *5.

No one disputed the scientific accuracy of Dr. Trakler's experiments that showed that the filler material used by GlowProducts was able to cool down to the temperature of the freezer and retain its cold temperature above room temperature for about thirty minutes, nor Dr. Mescher's experiment which showed that the allegedly infringing products when frozen were able to keep a glass of water below room temperature for about an hour. Whether a person skilled in the art would consider this level of cold retention sufficient to make the filler material "suitable to" the specific use of retaining cold or heat, is a question of fact for the jury. Faced with conflicting expert testimony, the jury was entitled to credit Dr. Trankler's testimony that the level of cold retention shown by the filler established that the material was adapted to the purpose of retaining

cold. See Comark Commc'ns. v. Harris Corp., 156 F.3d 1182, 1192 (Fed. Cir. 1998) ("It is not the province of an appellate court to second guess the jury's credibility determinations or to reevaluate the weight to be given the evidence"); Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1569 (Fed. Cir. 1992) ("Issues of credibility of witnesses are for the jury, and are not amenable to appellate review."); cf. Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) ("When [in a bench trial] a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").[19] The jury could also have taken into consideration the testimony of Litecubes' founder as well as GlowProducts' own advertising as to what level of heat retention made the filler suitable to the specific use of retaining heat or cold in the context of the invention. This evidence also supported the finding that the filler used in the GlowProducts' cubes was suitable to the specific use of retaining heat or cold. Accordingly, we hold that the district court did not err in denying the JMOL motion on these grounds.

VI.

We conclude that there is no basis to overturn the jury verdict of copyright and patent infringement. While we do not adopt the district court's reasoning, the district court reached the correct result in denying GlowProduct's motion to dismiss for lack of

---

[19] The jury need not have credited Mescher's argument that for the filler to be "suitable to or fit for the specific use of retaining cold" it must have a "practical effect" on the temperature of the water the cube was in. No such result was required by the district court's claim construction. But even if this was a requirement, the jury could have found that the tests, including Mescher's own, established a sufficient practical effect to meet the claim limitations.

subject matter jurisdiction. The issues of the extraterritorial reach of the Patent and Copyright Acts raised in the motion are not properly considered jurisdictional. We further conclude that substantial evidence supports the jury's verdict of infringement. The judgment of the district court is, therefore, affirmed.

<u>AFFIRMED</u>

COSTS

No costs.