**LAKE CHEROKEE HARD DRIVE TECHNOLOGIES, L.L.C.,**
Plaintiff,

v.

**MARVELL SEMICONDUCTOR, INC., Defendant.**

**Civil Action No. 2:10–cv–216–JRG.**

United States District Court,
E.D. Texas,
Marshall Division.

Aug. 6, 2013.

Gregory Scott Dovel, Dovel & Luner, Santa Monica, CA, Julien Antonio Adams, Dovel & Luner, Santa Monica, CA, for Plaintiff.

Ruffin B. Cordell, Fish & Richardson PC, Washington, DC, Indranil Mukerji, Fish & Richardson PC, Washington, DC, for Defendant.

## ORDER

RODNEY GILSTRAP, District Judge.

Before the Court is Defendant Marvell Semiconductor, Inc.'s ("MSI") Motion for Partial Summary Judgment to Limit the Scope of Lake Cherokee's Asserted Dam-

ages Base, filed May 14, 2013 (Dkt. No. 330). The Court heard argument on the motion on July 30, 2013. The Court having considered the parties' briefing and argument finds that the motion should be and is **GRANTED–IN–PART** and **DENIED–IN–PART** for the reasons set forth below.

## I. BACKGROUND

Plaintiff Lake Cherokee Hard Drive Technologies, LLC ("Lake Cherokee") filed the above-styled action against MSI on June 30, 2010, alleging that MSI infringed certain claims of United States Patents No. 5,844,738 and 5,978,162. By the present motion, MSI moves for summary judgment to exclude certain damages which Lake Cherokee seeks to include in its damages base for presentation to the jury.

## II. LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering motions for summary judg-

ment, the Court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505; *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

## III. ANALYSIS

MSI presents two separate grounds upon which it seeks to limit Lake Cherokee's damages. First, MSI asserts that Lake Cherokee cannot recover damages for the extraterritorial sales of a third-party. Second, MSI argues that Lake Cherokee failed to mark under 35 U.S.C. § 287(a) and is thus not entitled to pre-suit damages. The Court addresses each in turn.

a. *MSI's Motion for Summary Judgment on Extraterritoriality*

■ MSI contends that Lake Cherokee is impermissibly attempting to recover damages for accused products sold outside of the United States by non-party Marvell Asia Pte Ltd. ("MAPL").

■ United States patent law "operates only domestically and does not extend to foreign activities." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 455, 127 S.Ct. 1746, 167 L.Ed.2d 737 (2007) (quotation omitted). Under 35 U.S.C. § 271(a), "whoever without authority ... sells any patented invention ... within the United States ... infringes the patent." Thus, "[i]t is well established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon*, 420 F.3d 1369, 1375 (Fed.Cir.2005) (citing *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir.2000)). Any doubt regarding whether conduct falls outside the purview of United States patent law should be resolved by the presumption against extraterritoriality. *Microsoft Corp.*, 550 U.S. at 454, 127 S.Ct.

1746. Indeed, "[t]he presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." *Id.* at 454–55, 127 S.Ct. 1746.

The relevant facts as to extraterritoriality are largely undisputed. Defendant MSI is a California-based company which maintains no offices outside of the United States. MAPL is a Singapore corporation having operations based in Singapore. MAPL is not a party to the above-styled action. MSI and MAPL share a common parent corporation, Marvell Technology Group, Ltd. ("MTGL"). MGTL is also not a party to the above-styled action.

MSI conducts certain sales-related activities within the United States. Lake Cherokee describes MSI's domestic activities as follows:

- customers, including those in the U.S., send out requests for proposal to various potential chip suppliers including MSI, detailing the components desired, the desired schedule for development, and "it might also have a price target";
- MSI prepares and submits a written proposal in response;
- MSI uses such a request and response process at the beginning of a relationship with a customer, but such process may be foregone as the relationship matured;
- if the customer chooses MSI's proposal, MSI designs the chip, MSI and the customer reach agreement on the specification for the chip, MSI provides a working sample to the customer, and MSI negotiates a price for the chip;
- if the specification and price are acceptable, then the customer awards

MSI the "design win" whereupon the customer will buy all requirements for that particular chip from Marvell for a particular product;

- in "some cases," MSI and its hard drive customer memorialize their agreement on the specification and price in a product supply agreement, which is managed by MSI's legal department;
- only after the product supply agreement is in place, the customer may place periodic "purchase orders" for quantities of the chip; [1]
- for some orders, the "order location" is identified in MSI's accounting database as MAPL;
- with such orders, a third-party Taiwanese company manufactures the chip; then Marvell International, a Bermuda company ("Marvell Bermuda"), purchases the chip from the Taiwanese manufacturer, and Marvell Bermuda owns the chip until it transfers title to MAPL;
- MAPL thereafter holds title until the chip is delivered to the customer;
- at no time does Marvell Bermuda or MAPL take physical possession of the chip;
- the revenues from such chip sales are placed in Bermuda and Singapore;
- after production commences, MSI may participate in price renegotiations, if any.

(*See generally* Dkt. No. 350 at 1–5.) As MSI does not appear to dispute these facts, the Court accepts these facts for purposes of ruling on the present motion. Moreover, the parties agree that "the accused chips are currently, and always have

---

1. The Court notes that the purchase orders also indicate the buyer, seller/supplier, and delivery date and address. (*See, e.g.,* Dkt. No. 358, Exh. 30.)

been manufactured outside of the United States." (*See* Dkt. No. 330 at 3; Dkt. No. 350 at 1.) The parties also agree that the accused chips are delivered outside of the United States to third-parties. Though the percentages are disputed, Lake Cherokee's expert estimates that approximately 23% of these chips find their way into products of the third-party purchasers which are sold back into the United States domestic market. There is no dispute that the remaining portion (approximately 77%) are not sold into the United States domestic market. (*See* Dkt. No. 330 at 12.)

The issue before the Court is whether MSI's domestic activities constitute a sale under 35 U.S.C. § 271(a). MSI contends that it is the purchase orders that constitute a sale and that purchase orders submitted by foreign customers to MAPL are not sales within the United States. Lake Cherokee responds that in negotiating and entering into a product supply agreement (i.e. by reaching agreement on the specification and the price, and by having been selected as the design win for a particular hard drive), MSI has made an infringing sale under § 271(a). Lake Cherokee disputes that the purchase orders from foreign customers are a sale for purposes of § 271(a).

As noted above, there is no dispute that companies abroad submit purchase orders to MAPL in Singapore and that, pursuant to such purchase orders, certain accused products are manufactured abroad, delivered abroad, and never cross United States borders physically or by legal title. No revenues enter the United States. The Court finds as a matter of law that such sales cannot be considered to be "within the United States" under § 271(a). To hold otherwise would convert the act of entering into a product supply agreement within the United States into a springboard for liability each time a purchase

order is subsequently placed and fulfilled entirely abroad and where the accused product at no time enters the domestic United States market. *Cf. Microsoft Corp.*, 550 U.S. at 456, 127 S.Ct. 1746 (applying the presumption against extraterritoriality in rejecting AT & T's construction of § 271(f) because it "convert[ed] a single act of supply from the United States into a springboard for liability each time a copy of the software is subsequently made abroad and combined with computer hardware abroad for sale abroad" (quotations omitted)).

Even if the Court were to accept Lake Cherokee's position that the negotiation and execution of the product supply agreement constituted a "sale," the Court must, under *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, reject Lake Cherokee's argument that such a sale occurred "within the United States" where the product was both manufactured and delivered abroad. 617 F.3d 1296 (Fed.Cir.2010). In *Transocean*, two United States companies entered into a contract for the use of an accused oil rig that was built outside of the United States. *Id.* at 1307–08. While the companies negotiated and signed the contract outside of the United States, the contract specified that the "Operating Area" for the accused rig included the U.S. Gulf of Mexico. *Id.* at 1308. The Federal Circuit found that such "a contract between two U.S. companies for the sale of the patented invention with delivery and performance in the U.S. constitutes a sale under § 271(a) as a matter of law." *Id.* at 1309.

■ The question stemming from Lake Cherokee's position is whether a contract between two U.S. companies, negotiated and executed within the United States, for the sale of a patented invention with delivery and performance *outside* of the United States, constitutes a sale under § 271(a).

Despite the factual differences, the Federal Circuit's analysis in *Transocean* compels this Court to answer that question in the negative. Indeed, the Federal Circuit expressly found that the argument that "the location of negotiation and contracting should control is contrary to [the Federal Circuit's] precedent in [*Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353 (Fed.Cir.2008) ]." *Transocean*, 617 F.3d at 1310. In light of *Transocean*, the Court finds as a matter of law that such a contract as we have here is not a sale within the United States under § 271(a). *See also Ion, Inc. v. Sercel, Inc.*, Civil Action No. 5:06–CV–236, 2010 WL 3768086, at *4, 2010 U.S. Dist. LEXIS 144978 *12–13 (E.D.Tex. Sept. 16, 2010) (applying *Transocean* in holding that devices manufactured and distributed abroad fall outside the scope of U.S. patent law despite that defendant quoted prices from its U.S. offices, that orders were received in the U.S., and that payment was received in the U.S. in U.S. dollars), *aff'd*, 464 Fed. Appx. 901 (Fed.Cir.2012). Accordingly, the Court finds that MSI's motion for summary judgment of no liability on sales transacted by MAPL should be **GRANTED** with respect to products shipped to customers located outside the United States and which never reach the domestic United States market. As noted above, the parties agree that approximately 77% of the base for damages asserted by Lake Cherokee fall within this category. Those sales are excluded from presentation to the jury at the trial of this case.

■ However, there remains a genuine issue of material fact. as to whether accused products manufactured and delivered abroad but imported into the United States market by downstream customers (e.g. the hard drive manufacturers and original equipment manufacturers that install hard drives before importing them)

constitute an infringing sale under § 271(a). Accordingly, the Court finds that MSI's motion for summary judgment should be **DENIED** with respect to accused products .that ultimately reach the United States market and compete domestically with the rights of the patent holder. As noted above, Lake Cherokee's expert estimates that 23% of the base for damages asserted by Lake Cherokee fall within this category. These sales are not excluded from presentation to the jury at the trial of this case.

### b. *MSI's Motion for Summary Judgment on Marking*

■ As a prerequisite for obtaining pre-suit damages, the burden is on the patent owner to demonstrate that it complied with the marking requirements of 35 U.S.C. § 287(a). *E.g., Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed.Cir.1996). The patent owner is required to plead and prove that it provided actual or constructive notice to an alleged infringer. *Maxwell*, 86 F.3d at 1111.

■ MSI argues that Lake Cherokee cannot prove that the prior owners of the patents-in-suit marked any patented articles that it manufactured or required its licensees to mark any patented article that they manufactured. Cirrus Logic, Inc. ("Cirrus Logic") originally owned the patents-in-suit and sold the patents to Broadcom Corporation ("Broadcom"), who later sold the patents to Lake Cherokee. MSI contends that Cirrus Logic identified its "Galaxy D" chipset as an embodiment of the present invention, and that Cirrus Logic manufactured and sold its "Himalaya" system-on-chip after the issuance of the patents-in-suit. Neither the Galaxy D nor the Himalaya was marked with the number of either patent-in-suit. MSI also asserts that in licensing the patents-in-suit, neither Cirrus Logic nor Broadcom re-

quired its licensees to mark. Thus, MSI argues, Lake Cherokee is not entitled to pre-suit damages.

The Court does not reach the merits of MSI's contentions on the marking issue because MSI failed to disclose any of the above marking theories until well after the close of discovery. Federal Rule of Civil Procedure 37 provides that "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R.Civ.P. 37(c)(1). Although Lake Cherokee propounded an interrogatory expressly on marking (*see* Dkt. No. 350, Exh. 33 at 7), MSI did not disclose any marking theory, facts, documents, or witnesses as the interrogatory requested. MSI only stated that it "reserves the right to supplement." (*Id.*) Months after the close of discovery, MSI filed a letter brief asserting for the first time that Cirrus Logic failed to mark (Dkt. No. 303), and then filed the present motion asserting for the first time that Broadcom failed to mark.

The Court agrees with Lake Cherokee that MSI's marking theory should be precluded. MSI relies upon its Answer to excuse its late disclosure, but MSI's Answer simply states that Lake Cherokee's claims are limited by "35 U.S.C. §§ 286 and/or 287." MSI makes no other attempt to explain its failure and, with trial less than one week away, there is no possibility of curing the prejudice to Lake Cherokee. Such failure prejudices Lake Cherokee because it deprives Lake Cherokee of a meaningful opportunity to conduct fact discovery to test MSI's marking theory. *See generally PACT XPP Techs., AG v. Xilinx, Inc.*, 2012 WL 1034009, *3, 2012 U.S. Dist. LEXIS 41688 *13 (E.D.Tex. Mar. 27, 2012) (discussing considerations under

Rule 37). Accordingly, the Court finds that MSI's motion for summary judgment on marking should be **DENIED** and that MSI's marking theory should be and is **PRECLUDED** from presentation to the jury at trial.

## IV. CONCLUSION

For the reasons stated herein, the Court finds that MSI's Motion for Partial Summary Judgment to Limit the Scope of Lake Cherokee's Asserted Damages Base (Dkt. No. 330) should be and is hereby **GRANTED–IN–PART** and **DENIED–IN–PART** as stated herein. The Court **ORDERS** that MSI's marking theory regarding Cirrus Logic and Broadcom is hereby **PRECLUDED** from presentation to the jury at trial.

**So Ordered and Signed on this Aug. 5, 2013.**